No. 02-025

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 109

IN THE MATTER OF D.A.,

    Youth in Need of Care.

APPEAL FROM:    District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Monte Jewell, Montana Legal Services Association, Butte, Montana

    For Respondent:

        Hon. Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

        Ross P. Richardson, Henningson, Vukurovich & Richardson, Butte, Montana

        Robert M. McCarthy, Silver Bow County Attorney, Butte, Montana

        David L. Vicevich, Attorney at Law, Butte, Montana

    Guardian ad Litem:

        Timothy M. Dick, Corette, Pohlman & Kebe, Butte, Montana

Submitted on Briefs:  September 19, 2002

Decided:  April 24, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1	K.G. appeals an Order for Temporary Legal Custody from the Second Judicial District Court, Silver Bow County. We affirm.

¶2	The following issue is dispositive of this appeal:

¶3	Were the District Court's findings of fact sufficient to allow for meaningful appellate review?

## BACKGROUND

¶4	D.A. was born on July 11, 2000. Her natural mother is K.G. Her natural father, B.A., has not contested these proceedings.

¶5	At the request of law enforcement, the Department of Public Health and Human Services ("DPHHS") became involved with D.A. after a domestic occurrence between D.A.'s mother and her mother's live-in boyfriend, S.S. When social workers went to the home, they found that D.A. had significant bruising, was vomiting and no one had changed her diaper for quite some time. D.A. was taken to the hospital for an evaluation and then released to her mother's overnight care.

¶6	The following day, the county attorney contacted DPHHS and requested a follow-up examination. The social workers discovered that bruising was first noted on D.A. on May 10, 2001, but no one had sought medical attention until May 17, 2001. When questioned about this, K.G. told the social workers that she noticed the bruising after she left D.A. in the care of S.S. She claimed that S.S. had beaten her up when she confronted him about the

2

injuries. K.G. also told the social workers that S.S. had beaten her up previously and that she had been in domestic altercations with D.A.'s father before moving to Montana with S.S.

¶7 On May 21, 2001, DPHHS filed a Petition for Temporary Investigative Authority and Order to Show Cause in the District Court. The court issued an Order to Show Cause, granted emergency protective powers to DPHHS and appointed Timothy Dick as D.A.'s guardian ad litem. Following the expiration of the temporary investigative authority period, DPHHS filed a Petition for Temporary Legal Custody and Protective Services.

¶8 The District Court held a hearing on November 8, 2001. B.A. entered a Stipulation and Order granting temporary legal custody to DPHHS for six months the following day. On November 13, 2001, the court entered an Order for Temporary Legal Custody. K.G. appeals.

STANDARD OF REVIEW

¶9 When reviewing a district court's findings of fact, we must decide whether the court's findings are clearly erroneous. *See In re J.N.*, 1999 MT 64, ¶ 11, 293 Mont. 524, ¶ 11, 977 P.2d 317, ¶ 11. A finding of fact is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence or if, after reviewing the record, we are left with a definite and firm conviction that the district court made a mistake. *See In re J.N.*, ¶ 11.

DISCUSSION

¶10 Were the District Court's findings of fact sufficient to allow for meaningful appellate review?

3

¶11 At the outset, it is important to address the procedural history of this case. On February 1, 2002, the State moved to dismiss this appeal. The State argued that the District Court's temporary custody order was not "final," and, therefore, not appealable pursuant to Rule 1, M.R.App.P. On February 26, 2002, we concluded that "because the District Court has granted all the relief requested in the Department's petition, that its order dated November 13, 2001, granting temporary legal custody to the Department for a period of six months is a 'final order' within the meaning of Rule 1, M.R.App.P." Therefore, we denied the State's motion to dismiss the appeal.

¶12 After further reflection, we believe that our initial inclination was incorrect for the reasons discussed below. However, because we denied the State's motion to dismiss, we will entertain the merits of this case as if they were before us on direct appeal. But, for the benefit of future litigants, we will delineate the appropriate procedure one must hereafter follow in challenges to orders of temporary custody.

¶13 Rule 1(b), M.R.App.P., provides in relevant part:

> In civil cases a party aggrieved may appeal from a judgment or order, except when expressly made final by law, in the following cases:
>
> (1) From a final judgment entered in an action or special proceeding commenced in a district court, or brought into a district court from another court or administrative body.

This Court has defined a final judgment as "one which constitutes a final determination of the rights of the parties; any judgment, order or decree leaving matters undetermined is interlocutory in nature and not a final judgment for purposes of appeal." *In re B.P.*, 2000

4

MT 39, ¶ 15, 298 Mont. 287, ¶ 15, 995 P.2d 982, ¶ 15.  Whether to treat orders of temporary custody as final or interlocutory judgments presents a difficult question, as evidenced by the contrasting philosophies adopted in various jurisdictions.  *Compare In re Murray* (Ohio 1990), 556 N.E.2d 1169, 1175 ("[A]n adjudication that a child is neglected or dependent, followed by a disposition awarding temporary custody . . . constitutes a 'final order' . . . and is appealable . . . .") *with In re Marriage of Denly* (Iowa 1999), 590 N.W.2d 48, 51 ("Temporary custody orders are not final judgments appealable as a matter of right, but rather are interlocutory orders from which permission to appeal must be obtained from our court.").

¶14   Perhaps the gravity of the competing concerns complicates the final versus interlocutory order issue.  On one hand, temporary custody orders purport to deprive parents of a fundamental liberty interest, the right to the care and custody of their child.  *See Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599; *Matter of R.B.* (1985), 217 Mont. 99, 102, 703 P.2d 846, 848.  A prohibition against review of temporary custody orders would not only secure the deprivation, but could significantly disadvantage parents in permanent custodial proceedings.

¶15   For example, orders of temporary custody transfer custody of a youth in need of care to someone other than the child's parents for up to six months.  *See* § 41-3-442(2), MCA.  Before expiration of the six months, the state can petition a court to extend the temporary custody for an additional six months pursuant to § 41-3-442(2)(a), MCA.  Therefore, a court could conceivably strip a parent of his or her right to raise a child for up to one year,

5

preliminary orders of temporary investigative authority aside. Section 41-3-604(1), MCA, provides that "[i]f a child has been in foster care under the physical custody of the state for 15 months of the most recent 22 months, the best interests of the child must be presumed to be served by termination of parental rights." Were we to prohibit review of temporary custody orders, the state would irrefutably bank eighty percent of the time contemplated by the statutory presumption. Therefore, for those parents facing the prospect of termination proceedings and the adverse presumption, we presume that a review of the temporary custody order carries significant import.

¶16     On the other hand, we have a child whose welfare most often depends upon immediate action. To this end, the Iowa Supreme Court has often repeated the maxim that "the custody of children should be quickly fixed and seldom disturbed." *Denly*, 590 N.W.2d at 51. To subject a child to protracted custodial litigation and the regrettable delay associated with multiple direct appeals would run counter to this proposition. Further, the multiple direct appeals would force a child to languish in custodial limbo while the notice of appeal would arguably stifle a trial court's authority to act in the interim.

¶17     Despite the parental interests reiterated above, we do not believe that temporary custody orders embrace the finality contemplated in Rule 1, M.R.App.P. As its very name implies, a temporary custody order acts as a provisional intervention for the protection of the child. The order remains in effect for a finite period of time until the child is returned to the respective parent or parents or permanency proceedings are commenced. If the state commences permanency proceedings, the order of temporary custody is subsumed into the

6

final custody determination. Consequently, the order of temporary custody does not constitute a final determination of the rights of the parties.

¶18 Simply qualifying orders of temporary custody as interlocutory does not leave a parent, aggrieved by an erroneous order, without remedy. Such a party may invoke extraordinary remedies "when a cause of action or a right has arisen under conditions making due consideration in the trial courts and due appeal to this court an inadequate remedy, or when supervision of a trial court other than by appeal is deemed necessary or proper." Rule 17(a), M.R.App.P. One such extraordinary remedy, supervisory control, shall issue when a district court proceeds under a mistake of law causing a gross injustice for which an appeal is not an adequate remedy. *Safeco v. Montana Eighth Judicial Dist.*, 2000 MT 153, ¶ 14, 300 Mont. 123, ¶ 14, 2 P.3d 834, ¶ 14. Certainly, preclusion from direct appeal satisfies the inadequacy requirement for purposes of supervisory control. Accordingly, supervisory control is the appropriate mechanism to challenge an order of temporary custody. We do not intend to suggest that we are relaxing the burden a petitioner must establish under Rule 17(a), M.R.App.P., in neglect and dependency cases. However, given the gravity of the issues in cases such as this, we conclude that supervisory control affords us the opportunity to review those cases where a parent alleges that the entry of the temporary legal custody order constituted a mistake of law causing a gross injustice.

¶19 Based on the foregoing, we hold that orders of temporary custody are not "final judgments," subject to direct appeal, but instead are interlocutory orders from which this Court will grant relief in extraordinary circumstances. We believe this position to be the

7

more prudent means of balancing the competing interests involved. This result ensures the expeditious review of legal error while, at the same time, protects children from the instability borne out of protracted, piecemeal litigation. We believe the following statement aptly summarizes the policy considerations which support our holding:

> [T]his holding will protect the child from the protraction of custody litigation through repetitive appeals while still allowing prompt and comprehensive review of custody determinations. It will also support judicial economy and efficiency and uphold the integrity of the trial court's process in deciding custody matters. On the one hand, to permit piecemeal appeals subjects the child to the uncertainties of ongoing litigation. A custody proceeding, whether on the trial or the appellate level, threatens a child's stability. On the other hand, a custody decision once finally made must be subject to review. Drawing a bright line by which finality may be determined will encourage judicial economy and efficiency by making it clear both to litigants and to trial courts when the appellate process may properly be invoked. Our holding also serves to uphold the integrity of the trial process by not interfering with the trial court's efforts to craft a final decision and by not permitting premature challenges to those efforts.

*G.B. v. M.M.B.* (Pa. Super. Ct. 1996), 670 A.2d 714, 720-21.

¶20    Despite our holding that orders of temporary custody constitute interlocutory orders, we will address K.G.'s appeal as if it were before us on direct appeal because we denied the State's motion to dismiss in February 2002. We now turn to the merits of the District Court's order.

¶21    We have adopted the doctrine of implied findings for purposes of reviewing findings of fact. *See In re Mental Health of S.C.*, 2000 MT 370, ¶ 14, 303 Mont. 444, ¶ 14, 15 P.3d 861, ¶ 14; *Interstate Brands Corp. v. Cannon* (1985), 218 Mont. 380, 384, 708 P.2d 573, 576. The doctrine provides that "where a court's findings are general in terms, any findings

8

not specifically made, but necessary to the judgment, are deemed to have been implied, if supported by the evidence." *Interstate Brands*, 218 Mont. at 384, 708 P.2d at 576.

¶22 When deciding whether to grant temporary legal custody, a court must first determine whether the child is a youth in need of care. *See* § 41-3-442(1), MCA. To make this determination, the court must make written findings on issues, including but not limited to:

> (i) which allegations of the petition have been proved or admitted, if any;
>
> (ii) whether there is a legal basis for continued court and department intervention; and
>
> (iii) whether the department has made reasonable efforts to avoid protective placement of the child or to make it possible to safely return the child to the child's home.

Section 41-3-437(7)(a), MCA.

¶23 The court also must "determine the nature of the abuse and neglect and establish facts that resulted in state intervention and upon which disposition, case work, court review, and possible termination are based." Section 41-3-437(2), MCA.

¶24 The District Court's findings conform with these statutory requirements. First, the court found that DPHHS proved its allegation that D.A. was abused, dependent or neglected. In support of this finding, the court wrote that K.G. "failed to protect her from an environment which is dangerous to her physical and emotional well being." The court also found that "the state or condition of the natural mother is such that at the present time, she cannot provide adequate protection to [D.A.] to ensure that she does not suffer further abuse or neglect." In addition, the court found that "[d]ismissing the petition would create a

9

substantial risk of harm to the child or be a detriment to the child's physical or psychological well being." Finally, it found that DPHHS "made reasonable efforts to prevent or eliminate the need for removal of the child and/or to make it possible for the child to return home." These findings provided a sufficient basis to determine that D.A. was a youth in need of care under § 41-3-437, MCA.

¶25     Once the court determined that D.A. was a youth in need of care, the court could grant temporary custody if it determined by a preponderance of the evidence that:

> (a) dismissing the petition would create a substantial risk of harm to the child or would be a detriment to the child's physical or psychological well-being; and
>
> (b) unless there is a finding that reasonable efforts are not required pursuant to 41-3-423, reasonable services have been provided to the parent or guardian to prevent the removal of the child from the home or to make it possible for the child to safely return home.

Section 41-3-442(1), MCA.

¶26     Here, the District Court specifically found that "[d]ismissing the petition would create a substantial risk of harm to the child or be a detriment to the child's physical or psychological well being." It also found that DPHHS "made reasonable efforts to prevent or eliminate the need for removal of the child and/or to make it possible for the child to return home. The efforts of the Department are set forth in the Affidavit in support of the Petition." While these findings of fact are conclusory, our concern on review is whether the evidence supports them. We conclude that it does.

10

¶27    At the hearing, a clinical psychologist, Dr. Ned Tranel, testified as to his examination of K.G. concerning her parenting skills. Dr. Tranel found significant limitations in K.G.'s cognitive functioning, which bordered on mental retardation, as well as a severe deficit in her social knowledge. Based on his evaluation, Dr. Tranel testified that K.G. "would be unable to meet a minimal standard of parenting for a young child based on the lack of skill in providing the basic ingredients of safety, nurturing and attachment." He further testified that the prognosis for a change in K.G.'s behavior was poor and that the essential ingredients of D.A.'s development would "have to be generated by resources outside of [K.G.'s] capability." Dr. Tranel concluded that the court's dismissal of the petition for temporary legal custody would risk D.A.'s safety and opportunities for child development.

¶28    Dr. Robert Page, a psychotherapist, also examined K.G. to determine her mental status and ability to safely parent. He testified that K.G. would have difficulty developing autonomy, independence and other coping skills necessary to avoid further potentially abusive relationships. Dr. Page recommended that D.A.'s treatment plan be more long-term to give K.G. the time she would need to gain adequate parenting skills.

¶29    A mental health therapist, Michelle Miller, also testified as to K.G.'s parenting ability. Miller counseled K.G. once a week as part of her treatment plan to work on relationship issues. She testified that K.G. achieved little progress in these sessions.

¶30    This evidence sufficiently supports the court's findings. The court noted at trial that, while K.G. did not do "anything wrong personally," she made mistakes concerning other people in her life that endangered D.A.'s welfare. Finding that K.G. personally caused

D.A.'s injuries is not necessary for the court to grant temporary legal custody. A court may deem a youth in need of care regardless of the parent's care for the child, or even whether actual abuse or neglect occurred. *See In re A.M.*, 2001 MT 60, ¶ 42, 304 Mont. 379, ¶ 42, 22 P.3d 185, ¶ 42; *Matter of M.M.* (1995), 274 Mont. 166, 170-71, 906 P.2d 675, 678 (affirming an adjudication of children as youths in need of care where mother left children with inappropriate supervision); *Matter of A.W.* (1991), 247 Mont. 268, 272-73, 806 P.2d 520, 523 (affirming an adjudication of children as youths in need of care where mother continually exposed her children to a harmful living environment, including associating herself with abusive men, although not committing abuse herself).

¶31 K.G. argues that the District Court's findings do not comply with our holding in *Wolfe v. Webb* (1992), 251 Mont. 217, 824 P.2d 240. That case involved a worker's compensation claim where the district court adopted the findings of one party verbatim. We upheld the court's findings and stated that we would affirm "findings or conclusions so long as they are supported by the evidence and law of the case." *See Wolfe*, 251 Mont. at 229, 824 P.2d at 247 (citing Rule 52(a), M.R.Civ.P.). K.G. does not claim that the District Court adopted another party's findings. More important, the evidence of the case supports the court's findings.

¶32 For these reasons, we conclude that the District Court's findings of fact were sufficient.

¶33 Affirmed.

/S/ JIM REGNIER

We Concur:


/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶34    I agree entirely with the Court's conclusion that temporary legal custody orders are not final and, as a result, are not appealable. Indeed, I commend the Court for its willingness to reconsider its earlier decision to the contrary. I respectfully dissent from the Court's opinion, however, on the issue of whether the District Court's findings of fact in this case are sufficient. I would remand for more explicit findings of fact.

¶35    With regard to whether the District Court's findings of fact are sufficient, the Court is correct that we have adopted the doctrine of implied findings for purposes of reviewing findings of fact. In cases such as *In re Mental Health of S.C.*, ¶ 14, for example, we properly looked to the trial court's detailed findings of fact as a whole to determine whether that court had adequately expressed its reasons for selecting involuntary medication as required by statute. Here, we have no detailed findings. Indeed, three of the District Court's "findings" merely reiterate statutory language.

¶36    Under these circumstances, I would not apply the doctrine of implied findings. First, permitting trial courts to simply regurgitate statutory language, without making actual factual findings related thereto, merely makes it more difficult for parties to determine whether potential appealable issues exist. The result likely is more appeals to this Court, with the additional issue on appeal of whether sufficient findings have been made.

¶37    Second, permitting trial courts to simply regurgitate statutory language essentially puts the burden on this Court of both determining what findings necessarily have been

14

"implied," and then searching the record to find evidence supporting those findings. With all due respect to Montana's busy trial courts, it is my view that the better choice is to require at least minimal factual findings which amount to more than a mere repetition of statutory language.

¶38 In addition, as quoted by the Court, one of the District Court's "findings" first reiterates the statutory language from § 41-3-442(1)(b), MCA, regarding the DPHHS having made "reasonable efforts," and then cites to "the Affidavit in support of the Petition" filed by the DPHHS as setting forth those efforts. It is a mystery to me how matters recited in a supporting affidavit properly can be relied on by a trial court to grant temporary legal custody based on a preponderance of the evidence after a required hearing. Statements supporting an initiating petition simply are not evidence upon which a trial court can rely in making findings of fact. The matter of implied findings aside, and with due regard to the substantial time constraints the trial courts face in child abuse and neglect cases, I fear this type of finding only provides additional fodder for those who believe district courts are mere "rubber stamps" for the DPHHS.

¶39 In sum, I disagree that the District Court's findings of fact are sufficient and I dissent from that portion of the Court's opinion.

/S/ KARLA M. GRAY

15

Justice Terry N. Trieweiler concurring and dissenting.

¶40 I concur with the majority's conclusion that the District Court's Findings of Fact were sufficient to allow meaningful appellate review and that they were supported by substantial evidence.

¶41 I dissent from the majority's conclusion that an order granting temporary custody of a parent's child to the Department of Health and Human Services is not a final order or judgment subject to direct appeal pursuant to Rule 1, M.R.App.P.. Where the order grants all the relief requested, the fact that the custody is temporary does not make the order less final.

¶42 As correctly stated in ¶ 13 of the majority Opinion, this Court has defined a final judgment as "one which constitutes a final determination of the rights of the parties. . . ." *In re B.P.,* 2000 MT 39, ¶ 15, 298 Mont. 287, ¶ 15, 995 P.2d 982, ¶ 15. Based on that logical and clear explanation of a "final judgment," I disagree that whether to treat an order granting temporary custody of a child to the Department of Health and Human Services presents a difficult question. Resolution of the issue simply requires examination of the relief sought by the initiating petition and the relief granted by the District Court's order.

¶43 In this case, the petition for temporary legal custody and protective services sought the following relief:

> WHEREFORE, petitioner prays for an order granting the following relief:
>
> 1. That it has been established that the Department of Public Health and Human Services has made reasonable efforts to prevent or eliminate the need for removal of [D. A.] and/or to make it possible for [D. A.] to return to or remain in the family home.

16

2.  At this time, removal of [D. A.] from the home is necessary because continuation in the home would be contrary to the welfare of [D. A.].

3.  That this court declare [D. A.] youth(s) in need of care.

4.  That temporary legal custody of [D. A.] be granted to Butte-Silver Bow County Department of Public Health and Human Services for a period of six (6) months.

5.  That any law officer of the State of Montana or any agency thereof be authorized and directed to assist petitioner or agent of Butte-Silver Bow County Department of Health and Human Services in carrying out the provision of any order issued by the court in this matter.

6.  That Tom Dick continue as guardian ad litem for [D. A.].

7.  For such other and further relief as the court may order.

¶44   The District Court did make the finding requested in ¶ 1 of the County Attorney's petition and then granted the following relief:

Having reviewed the stipulation filed herein, it is the further finding of the court:

1.  That it has been established that the Department has made reasonable efforts to prevent or eliminate the need for removal of [D. A.] and/or made it possible for [D. A.] to return to or remain in the family home.

2.  At this time, removal of [D. A.] from the home is necessary because continuation in the home would be contrary to the welfare of [D. A.].

3.  That temporary legal custody is granted.

4.  That all provisions of the Order of this Court shall remain in full force and effect for six months.

5.  That Tim Dick continue as appointed counsel and Guardian Ad Litem for [D. A.].

¶45    In other words, the District Court's order constituted a final determination of the rights of the parties as placed in issue by the only petition for relief before the court.

¶46    However, of greater concern than the majority's failure to simply follow the rule regarding final judgment, is the significance of the majority Opinion.  As conceded by the Court, a parent's right to custody of his or her child is a fundamental liberty interest.  Refusal to entertain an appeal from a district court's deprivation of a parent's right to custody of his or her child ignores the significant interest at issue and, for all practical purposes, allows a district court's decision to temporarily deprive a parent of his child to escape review even though deprivation may be for as long as one year and even though that deprivation may substantially impact the District Court's and this Court's ultimate determination of what is permanently in the child's best interest.

¶47    The majority concludes that the parents' and child's constitutional rights must be balanced with the potential detriment that could result from multiple appeals.  However, I disagree that the solution is to eliminate a parent's right to appeal altogether.  The solution is to develop an expedited process by which a parent's constitutional rights can be protected without endangering the welfare of the child or prolonging proceedings in the district court.  There is no reason that cannot be done.  I have seen it done repeatedly where time has been of the essence and the issue involved captured the imagination of a majority of this Court.

¶48    The majority's response is that denial of the right to appeal does not leave a parent who has lost custody of his or her child without a remedy because there is always the remedy of supervisory control pursuant to Rule 17(a), M.R.App.P.  However, whether to accept a

18

petition for supervisory control is an act of discretion with this Court which is being exercised with less and less frequency. More and more often the reaction of some members of this Court is to bemoan the workload resulting from appeals over which there is no discretion and, in a knee jerk fashion, simply reject applications for supervisory control as a matter of routine. At least one member of this Court would rather swim laps in the Berkeley Pit than accept supervisory control. To suggest that supervisory control is a viable alternative to a parent's right to appeal unlawful denial of the parent's right to custody of a child, rings hollow in light of this Court's routine practices.

¶49 I agree with the Supreme Court of Ohio which in *In re Murray* (Ohio 1990), 556 N.E.2d 1169, 1174-75, stated:

> We feel that a custodial order emanating from an adjudicatory hearing is a final appealable order because it is a judgment which mandates that parents comply with the directives of third parties for a potentially considerable period of time. A contrary opinion would leave parents without the possibility of review of such custodial order by a higher tribunal for a possible lengthy time period. In this sense, it is a determination of the action because an appeal at a later date will not be able to reverse the course of action already completed. It hardly need be said that the right of a parent to raise his or her children is a substantial right. It is also the manifest importance of this right which makes this holding necessary despite the problems that may be presented by duplicative or redundant appeals.

¶50 In this case, the only petition pending in the District Court was the County Attorney's petition for temporary custody of the Appellant's child. That petition was granted. The order granting it was, therefore, a final disposition of the issues pending in the District Court and should have been automatically appealable. While this Court's internal procedures should be modified to assure a more expeditious resolution of that kind of appeal, the

solution is not to deny the appellant's right to appeal altogether. Doing so simply allows the possible unlawful denial of a constitutional right to go uncorrected.

¶51    For these reasons, I concur in part with the majority Opinion and I dissent in part from that Opinion.

/S/ TERRY N. TRIEWEILER