JUSTICE NELSON
concurring.
¶39 I concur in the Court’s Opinion. I add two observations.
¶40 First, in In re Mental Health of K.G.F., 2001 MT 140, 306 Mont. 1, 29 P.3d 485, we emphasized the duty of the courts to safeguard “at every stage of the proceedings” the due process rights of individuals subject to involuntary mental health commitments. We stressed that the courts must rigorously adhere to the mandated statutory standards. In re K.G.F., ¶ 42. In that case, we strongly criticized the fact that KG.F.’s appointed counsel had only four or five hours to prepare for what we described as a “perfunctory process that lasted minutes.” In re K. G.F., ¶ 43. And, we observed that the person’s Article II, Section 17, due process rights are not protected when counsel has little time to prepare for a hearing that infringes on a person’s relationships and liberty. In re K.G.F., ¶ 42.
¶41 These observations and criticisms are equally pertinent when it comes to the appointment of the professional person under § 53-21-122(2), MCA. In ¶ 36, we note that Eric Greenberg-who was not even appointed at the time-met with C.R.C. for twenty minutes on the morning of the hearing. This statute requires more than the sort of examination that occurred here. Indeed, this statute contemplates that the court will appoint the professional person at the time of the *143 person’s initial appearance, and that the hearing will not be on the same day as the initial appearance but within five days thereafter. These statutory requirements as to the appointment of the professional person were not rigorously followed here.
¶42 Plainly, if the due process rights of the person being committed are to be anything more than hollow guarantees, all participants in the process-whether counsel or the examining professional person-must exercise their respective duties with sufficient time and deliberation to ensure that the interests of the person are protected in fact and not simply in theory.
¶43 Second, this case exemplifies an unfortunate conundrum. Despite how expeditiously the trial court may handle the case, by the time the involuntarily committed person is able to obtain appellate review, the damage of an improper commitment has already been done. As here, the involuntarily committed person has been restrained of her liberty for at least ninety days; she has suffered the violation of her fundamental rights to individual privacy, liberty, and due process; and she must henceforth forever bear the stigma of having been involuntarily committed as being seriously mentally ill. See In re K.G.F., ¶ 53. Under these circumstances an after-the-fact appeal is not an adequate remedy.
¶44 In a somewhat analogous situation-where the state seeks, via a temporary custody order, to deprive parents of their fundamental right and liberty interest in parenting-we have taken the position that in some circumstances an appeal is not an adequate remedy. We have held that, given the gravity of the issues, extraordinary relief by way of supervisory control is appropriate where the court is proceeding under a mistake of law and causing a gross injustice. In re D.A., 2003 MT 109, ¶ 18, 315 Mont. 340, ¶ 18, 68 P.3d 735, ¶ 18; See also Rule 17, M.R.App.P.
¶45 Violations of the statutory scheme designed to protect the individual privacy, liberty and due process rights of a person being involuntarily committed for mental health reasons are no less egregious, grave and permanent, than those issues we addressed in In re D.A. Accordingly, we ought to be willing to discretionarily review involuntary mental health commitment cases by way of supervisory control where it is clear that the statutory scheme is not being rigorously followed and where the due process rights of the person are not being protected at every stage of the proceedings. In doing so, we will be able to prevent the sorts of violations of the involuntarily committed person’s fundamental rights to individual privacy, liberty *144 and due process that are evident in that case at bar.
¶46 I concur.