No. 04-439

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 241

IN THE MATTER OF S.C. and L.Z.,

     Youths In Need Of Care.

APPEAL FROM:    The District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDJ 2002-195 Y,
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

     For Appellants:

          Jane M. Berger, Public Defender's Office, Great Falls,
Montana (Father)

          Carl B. Jensen, Jr., Public Defender's Office, Great Falls,
Montana (Mother)

     For Respondent:

          Honorable Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

          Brant Light, County Attorney; Matthew S. Robertson,
Deputy County Attorney, Great Falls, Montana

          Mark Bauer, Attorney at Law, Great Falls, Montana (Guardian Ad Litem)

Submitted on Briefs:  September 7, 2005

Decided:   September 27, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     S.Z. (Father) and D.C. (Mother) appeal from the order entered by the Eighth Judicial District Court, Cascade County, granting the Department of Public Health and Human Services (the Department) permanent legal custody, and terminating both parents' rights in their two minor children.  We affirm.

¶2     The following issues are dispositive on appeal:

¶3     Did the District Court abuse its discretion in granting the Department's motion for a protective order against Mother's discovery requests?

¶4     Did the District Court err in failing to bifurcate the adjudicatory and dispositional hearings?

¶5     Did Father receive ineffective assistance of counsel by his counsel's failure to object to the District Court's failure to bifurcate the adjudicatory and dispositional proceedings?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     Father and Mother are the biological parents of two youths:  S.C. and L.Z.  On October 3, 2002, the Department petitioned for temporary investigative authority (TIA) and emergency protective services due to a concern that the parents were using methamphetamine.  The Department notified the District Court that the matter involved the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-1923, and three tribes were notified of the proceedings.  On October 16, 2002, the District Court ordered emergency services and TIA.

¶7     At the October 29, 2002, show cause hearing, the District Court heard testimony from Department social worker, Erin Griebel-Heidt (Griebel-Heidt), and ICWA expert, Tobe Whitaker (Whitaker). Griebel-Heidt testified that she was assigned to investigate the welfare of the children after the Department received a report that the parents were using methamphetamine, and also because the children were drawing pictures of drug paraphernalia. Whitaker testified that drug use was inconsistent with traditional Indian culture and that it was proper for the children to have been removed. The District Court issued an order concluding that, by clear and convincing evidence, "the children have suffered exposure to unreasonable risk and are in danger of abuse or neglect, and are in danger of serious emotional or physical harm if returned to the home at this time." Consequently, the District Court granted the Department's TIA request for ninety days and found the children's current placement appropriate. The District Court also noted in its order that no tribe had indicated an intention to intervene or assume jurisdiction in the action.

¶8     On January 23, 2003, the Department petitioned to continue its emergency services, adjudicate the children as youths in need of care, and requested temporary legal custody. The District Court held an adjudicatory hearing on February 11, 2003, and took judicial notice of the entirety of the proceedings held on October 29, 2002, which included testimony from Mother, Whitaker, and Griebel-Heidt. The District Court granted the parents thirty days to move for reconsideration of the District Court's reliance on testimony from the show cause hearing. The parents did not seek reconsideration.

¶9 However, on February 19, 2003, Mother filed a motion to dismiss which alleged, among other things, that, at the adjudicatory hearing, the District Court had improperly taken judicial notice of testimony entered in the earlier show cause hearing. The District Court denied Mother's motion to dismiss on May 1, 2003, concluding that there was sufficient additional evidence to sustain its findings beyond the testimony judicially noticed from the show cause hearing, and noted that it did not specifically rely on the earlier testimony in its findings.

¶10 On February 19, 2003, the District Court issued an order adjudicating the children as youths in need of care, and granted the Department temporary legal custody for six months. The District Court concluded that mere use of methamphetamine was sufficient to establish that the children were in danger of abuse or neglect, and that the parents' failure to stop using drugs also warranted the finding that the children were youths in need of care.

¶11 On February 20, 2003, the Department moved for a protective order against discovery submitted by Mother on February 12, 2003, which included interrogatories and requests for admissions and production. The District Court granted the Department's request for a protective order on March 6, 2003.

¶12 On June 3, 2003, the District Court held a dispositional hearing and approved the children's current placement, transferred temporary legal custody to the Department, and ordered the parents to complete treatment plans. Thereafter the District Court held a review hearing and granted the Department's request for an extension of temporary legal custody for six months, to which counsel for both parents agreed. On December 22, 2003, after the

4

parties had stipulated to a permanency plan, the District Court approved the permanency plan.

¶13   On February 17, 2004, the Department filed a petition requesting permanent legal custody and termination of parental rights.  In the petition, the Department alleged that the children were in out-of-home placement for longer than one year, and that § 41-3-604, MCA, recognizes a child's need for permanency, which allows a district court to terminate parental rights based on the length of time the child is in care.  The Department also alleged that the parents failed to fully comply with the court-ordered treatment plan.

¶14   At the May 20, 2004, hearing on the petition for termination of parental rights, the District Court determined that the evidence established, beyond a reasonable doubt, that the parents did not complete their treatment plans–specifically that they did not refrain from drug use, did not cooperate with the Department, and did not meet the drug treatment requirements.[1]  Moreover, the District Court concluded that custody with the parents would likely result in serious emotional damage to the children and, therefore, termination was in the children's best interests.

¶15   Mother and Father filed separate notices of appeal on June 2, 2004, and likewise filed separate briefs on appeal to this Court.

---

[1] The District Court, in its June 1, 2004 order, explained that no documentation was provided which verified whether the children were Indian children.  However, the District Court nevertheless concluded that the children were of Native American heritage and  applied the burden of proof for ICWA cases–beyond a reasonable doubt.  No ICWA issues are raised on appeal.

**STANDARD OF REVIEW**

¶16 The standard of review concerning a district court's ruling on a discovery matter is whether the district court abused its discretion. *Hawkins v. Harney*, 2003 MT 58, ¶ 17, 314 Mont. 384, ¶ 17, 66 P.3d 305, ¶ 17. In general, the District Court is in the best position to determine good faith discovery efforts. *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 2004 MT 297, ¶ 70, 323 Mont. 387, ¶ 70, 101 P.3d 742, ¶ 70.

¶17 In reviewing a district court's conclusions of law, we determine whether they are correct. *In re D.B.*, 2004 MT 371, ¶ 30, 325 Mont. 13, ¶ 30, 103 P.3d 1026, ¶ 30.

**DISCUSSION**

¶18 **Did the District Court abuse its discretion in granting the Department's motion for protective order against Mother's discovery requests?**

¶19 Mother argues that the District Court abused its discretion in granting the State's request for a protective order from her discovery requests, which included requests for admission, interrogatories, and requests for production. Mother claims that the State's protective order deprived her of protection against potential "surprise" witnesses and exposed her counsel to ineffective assistance of counsel claims. Mother notes that other jurisdictions have determined that the failure to pursue actual discovery is a waiver of any objection to "surprise" testimony, and that such failure constitutes ineffective assistance of counsel in youth in need of care proceedings. Mother also contends that the importance of parental rights should outweigh the Department's objections.

6

¶20 The Department argues that the District Court properly granted its motion for a protective order because the Department maintained an open-file policy which provided access to the information which formed the basis of the petition's allegations. Further, the District Court insisted that the Department fulfill its claims of complete and open access by providing that "[a]ny piece of evidence or witness offered at trial not disclosed by a review of the file may well be excluded on objection." The Department contends that Mother's discovery requests would have "put the Department through many burdensome hoops without increasing the information she could have obtained" and, therefore, the District Court did not abuse its discretion in granting the protective order.

¶21 Pursuant to § 41-3-422(4), MCA, "[a]n abuse and neglect petition is a civil action brought in the name of the state of Montana. The Montana Rules of Civil Procedure and the Montana Rules of Evidence apply except as modified in this chapter." Additionally, this Court has previously concluded that the Rules of Civil Procedure apply in youth in need of care proceedings. *Matter of Swan* (1977), 173 Mont. 311, 313, 567 P.2d 898, 900. The District Court acknowledged that the Rules of Civil Procedure were applicable, noting "[w]ithout question, discovery is appropriate. The question is how that discovery may be carried out as efficiently and completely as necessary."

¶22 Indicating that the County Attorney had a "long-standing policy to make available to the adverse parties its entire file for inspection and photocopying," the District Court also noted, however, that the Department's file in youth cases had not previously been made available. Referencing what was an apparent recent change in procedure, the court stated

7

that "[t]he State now advises that such file will also be made available for inspection and photocopying. Access to these files, it appears, would give the parent every piece of information available to the State or its counsel." Thus, it concluded that:

> In summary, it appears that an adequate discovery request in these cases would be a simple request for production for the purpose of inspection and photocopying of these files. On a case by case basis, there may be the need for additional or follow up discovery. That does not appear to be the situation here at least at this juncture where the files apparently have not been reviewed.

¶23 After review of the record, we cannot conclude that the District Court abused its discretion in granting the State's request for a protective order. The Mother's requests were satisfactorily resolved in this case by having access to the Department's and County Attorney's files. Further, the District Court ruled that "[a]ny piece of evidence or witness offered at trial not disclosed by a review of the file may well be excluded on objection"–a fair warning that full disclosure was required. Mother has not demonstrated that she was prejudiced by the District Court's resolution of the discovery issue.

¶24 We caution, however, that parties who are subject to parental termination proceedings have the full right to discover the case against them. We look askance at blanket denials or other discovery orders which hinder a party's effort to do so. We affirm here because, in light of the requests at issue, the mode of discovery approved by the District Court was sufficient *in this case*. As the District Court correctly noted, however, other circumstances may present "the need for additional or follow up discovery," and, in such cases, further discovery must be made available.

8

**¶25 Did the District Court err in failing to bifurcate the adjudicatory and dispositional hearings?**

¶26 Mother and Father, in their respective briefs, argue that the District Court violated § 41-3-438, MCA, which requires the adjudicatory and dispositional stages be separated, when it granted temporary legal custody to the Department in the adjudicatory hearing. Although the District Court scheduled a dispositional hearing and entered a later dispositional order, the parents contend that the "real grant of temporary [custody] occurred at the adjudicatory hearing."

¶27 The Department agrees that the District Court awarded temporary legal custody at the adjudicatory hearing on February 11, 2003, which may have been in error. However, the Department asks this Court to treat the earlier assignment of temporary legal custody as a "temporary placement" regardless of the actual language used in the order. Moreover, the Department claims that: (1) the District Court promptly redressed any potential error at the adjudicatory hearing by asking whether there was a need for a dispositional hearing and then scheduling one; (2) the parents suffered no injury from the District Court's error; (3) the District Court allowed the parents to move for reconsideration of the adjudication; and (4) by the time of the dispositional hearing, Mother had stipulated to the temporary placement. Consequently, the Department claims that, pursuant to § 46-20-701(2), MCA, the parents can show "no substantive harm" and therefore the District Court cannot be reversed on this basis. We note however, that § 46-20-701(2), MCA, is a criminal statute, and is therefore not applicable to the case at issue.

9

¶28 It is not disputed that the District Court erred in this case when it initially failed to structure the dispositional issues apart from the adjudicatory issues. It is clear, pursuant to § 41-3-438(2)(a), MCA, that the "hearing process must be scheduled and structured so that dispositional issues are specifically addressed apart from adjudicatory issues." However, the District Court, upon discovery of the error, immediately sought to remedy the misstep by scheduling a dispositional hearing to address the dispositional issue separately. While not excusing the error, the District Court's holding of a second dispositional hearing made the initial order, which placed the children in foster care and thus, was a "dispositional" order, the functional equivalent to an order of placement pending the dispositional hearing since temporary placement outside the home is allowed at every stage of the proceeding pursuant to §§ 41-3-301, 41-3-432(5)(a)-(b), and 41-3-437(6)(b), MCA.

¶29 We have previously held that "[a] harmless error does not mandate that we reverse a district court judgment; an 'error must cause substantial prejudice' to warrant reversal." *Tipp v. Skjelset*, 1998 MT 263, ¶ 16, 291 Mont. 288, ¶ 16, 967 P.2d 787, ¶ 16 (citation omitted). Consequently, we conclude that, in light of the facts of this case, the District Court's error, followed by its immediate efforts at remediation, caused, in the end, no substantial prejudice to the parents warranting reversal.

¶30 Alternatively, Mother seems to argue that the adjudicatory and dispositional hearings were improperly bifurcated because the District Court took notice and improperly relied upon the testimony of ICWA expert Whitaker offered at the earlier show cause hearing.

Mother contends this contributed to the failure to separate the adjudicatory and dispositional hearings as required by law.

¶31 The State responds by arguing that, pursuant to Rule 202(b)(6), M.R.Evid., a court may take notice of the records of any court in the state. The State also explains that this Court has previously concluded that it is not error for a district court to take notice of earlier testimony in a youth in need of care case when the complaining parent has had an opportunity to cross-examine the witness. *In re A.M.*, 2001 MT 60, ¶ 51, 304 Mont. 379, ¶ 51, 22 P.3d 185, ¶ 51. *See In re M.F.* (1982), 201 Mont. 277, 286-87, 653 P.2d 1205, 1210.

¶32 We are unsure of Mother's argument here, but note that the District Court allowed the parents to move for reconsideration at the February 11, 2003, hearing of its judicial notice of testimony from a previous hearing, and as mentioned previously, the parents did not move for reconsideration. Because the District Court determined there was sufficient evidence at the later hearing, without reliance on the noticed testimony, to sustain a finding of abuse and neglect, and because Mother does not establish that use of the noticed testimony disadvantaged her, we conclude that no error has been demonstrated.

¶33 **Did Father receive ineffective assistance of counsel by his counsel's failure to object to the District Court's failure to bifurcate the adjudicatory and dispositional proceedings?**

¶34 Father argues that this Court has previously held that parents have a right to effective assistance of counsel in proceedings affecting fundamental parental rights, and that due to

11

his counsel's failure to object to the District Court's failure to bifurcate the adjudicatory and dispositional hearings, Father received ineffective assistance of counsel. Father asks this Court to accept the issue for the first time on appeal pursuant to the plain error doctrine because the failure to bifurcate the proceedings relates to his fundamental right to parent and right to fair process.

¶35 We will invoke plain error to enable review in those limited situations where the failure "to review the claimed error at issue may result in a manifest miscarriage of justice . . . or may compromise the integrity of the judicial process." *State v. Adgerson*, 2003 MT 284, ¶ 13, 318 Mont. 22, ¶ 13, 78 P.3d 850, ¶ 13. However, because we have already concluded that the District Court's error was harmless and did not cause substantial prejudice, no "manifest miscarriage of justice" occurred in this case, the plain error doctrine does not apply, and we need not further address the issue as to ineffective assistance of counsel.

¶36 Affirmed.

/S/ JIM RICE

We Concur:

/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶37 I agree entirely with the Court's opinion on the issue relating to ineffective assistance of counsel. I also join in the Court's resolution of the bifurcation issue, but only--as the Court states it--"in light of the facts of this case" and, in particular, the trial court's expeditious effort to remediate its earlier error. I respectfully dissent from the Court's analysis of the discovery issue and from the result it reaches. I would hold that the District Court abused its discretion in severely limiting the Mother's discovery rights and reverse.

¶38 Before turning to my views regarding the discovery issue, I feel compelled to comment on portions of the Court's opinion on the bifurcation issue. The Court notes that the Department says the trial court "may have been in error" with regard to the failure to bifurcate; the Court also observes that "the Department asks this Court to treat the earlier assignment of temporary legal custody as a 'temporary placement' regardless of the actual language used. . . ." I am out of patience with these kinds of statements and requests from the Department which--in my view--reflect an inappropriate overall attitude about child abuse and neglect/parental termination cases.

¶39 Must we really question whether the Department can read the plain language in the statutes requiring separate adjudicatory and dispositional proceedings? Assuming not, the Department should be responsible enough to simply concede that error occurred, rather than say it "may have" occurred.

¶40 Furthermore, for the Department to ask this Court to "treat" something as that which it is not--here, the earlier assignment of temporary legal custody as a "temporary placement" without regard to the actual language used--is, in my view, indefensible. The Department

13

is obligated to ensure that child abuse and neglect cases are conducted in strict compliance with Montana's very explicit statutory language. We have for far too long merely warned the Department about such matters. *See, e.g., Matter of F.H.* (1994), 266 Mont. 36, 40, 878 P.2d 890, 893 ("We also sound a stern warning to DFS to strictly follow the statutory procedure in future cases or we will, in no certain terms, punish its conduct . . . ."); *Inquiry into M.M.* (1995), 274 Mont. 166, 174, 906 P.2d 675, 680 ("We also reiterate our warning to DPHHS to abide by the strict statutory requirements in termination proceedings or risk grave harm to the very children whom they seek to protect.").

¶41 I have long expressed concerns about the manner in which the Department and the district courts handle child abuse and neglect/parental termination cases and this Court's willingness to overlook conduct that does not comply with statutory mandates. *See, e.g., In re M.A.W.* (1993), 256 Mont. 296, 319, 846 P.2d 985, 999 (Gray, J., dissenting); *Matter of F.H.*, 266 Mont. at 41, 878 P.2d at 894 (Gray, J., dissenting); *Inquiry into M.M.*, 274 Mont. at 175, 906 P.2d at 680 (Gray, J., dissenting); *In re M.P.M.*, 1999 MT 78, ¶¶ 25-26, 294 Mont. 87, ¶¶ 25-26, 976 P.2d 988, ¶¶ 25-26 (Gray, J., concurring and dissenting); *In re D.A.*, 2003 MT 109, ¶¶ 34-39, 315 Mont. 340, ¶¶ 34-39, 68 P.3d 735, ¶¶ 34-39 (Gray, J., concurring and dissenting). It is critical, in my view, that the Court stop tolerating this kind of sloppiness from a Department which is ultimately dealing with both a parent's constitutional right to parent her or his child and children's best interests.

¶42 Turning to the discovery issue, it is my view that the Department's recent change in policy with regard to making its files in youth cases available to a parent in abuse and neglect proceedings is long overdue. It is my hope that this is a policy change applicable to

all such cases and not just where discovery is requested. Indeed, it is relatively clear to me that, had the Department implemented this policy earlier, the discovery issue might not have arisen in this case. It appears that, faced with a challenge, the Department finally has realized that its earlier policy in this regard was inappropriate.

¶43     Regarding the Court's analysis of the discovery issue, the Court is clearly correct that the discovery rules contained in the Montana Rules of Civil Procedure apply in child abuse and neglect proceedings. I also agree that a district court has broad discretion with regard to discovery matters. I would hold, however, that the District Court's severe limitation on discovery constituted an abuse of discretion and that the error was reversible.

¶44     Within days after the hearing on the Department's petition for temporary legal custody of the children, counsel for the Mother filed discovery requests on the Department and its attorney, a deputy Cascade County attorney. The discovery consisted of 13 Requests for Admission, 5 Interrogatories and 2 Requests for Production. The discovery sought clearly was intended to try to pin the Department down to certain positions early in the proceedings. Indeed, some of the requests for admissions related to past events and some related to the Department's future plans for the family.

¶45     In essence, the District Court authorized the Mother's requests for production based on the Department's recent policy change with regard to opening its files. It denied the remainder of Mother's requested discovery on the general basis that the discovery sought was "obtainable in a more convenient, less burdensome and less expensive manner by review of the files." The trial court appears to have glossed over the individual requests for admission, merely stating that "the answer is obvious, in most cases a denial . . . [or] a

15

repudiation of assertions set forth in the petition or supporting affidavit." With respect to the Mother's interrogatories, the Court's reaction to the request for identification of any expert intended to be called was that the "reports of these individuals are usually contained in the file in satisfactory detail to satisfy Rule 26."

¶46 On appeal, the Court simply states--very briefly and summarily--that it cannot conclude the District Court abused its discretion in so severely limiting the Mother's discovery rights. I absolutely disagree. According to the Court, mere file review is apparently sufficient discovery for a parent who may ultimately face losing a child, notwithstanding the breadth of discovery allowed under Rule 26, M.R.Civ.P., and almost certainly used--at least to some extent--by parties involved in civil legal actions about such occurrences as dog bites and minor fender benders. No explanation or analysis is offered by the Court for its conclusion.

¶47 With specific regard to the 13 requests for admissions, some do seek repudiations of assertions in the petition and supporting affidavit. I believe this is a common approach in requests for admission and I know of no authority which precludes them. Indeed, even a quick scan of Rules 36(a) and (b), M.R.Civ.P., which address requests for--and the effect of--admissions makes it apparent why this form of discovery is so prevalent and valuable. If, indeed, the answers to the 13 requests for admission were as obvious as the trial court perceived, how could such a minimal number of them be overly burdensome and inconvenient to the Department? Regarding the Mother's 5 interrogatories, it is my view that several were overly broad, but only *after* the Department's new "open file" change. On the other hand, the Mother's interrogatories seeking any "declarations against interest" and

16

the names of expert witnesses are entirely appropriate interrogatories which go directly to the case the Department intended to present against the Mother. Are fewer than 5 interrogatories really unduly burdensome? I am convinced this relatively minimal discovery would be allowed against any other state agency or party in general civil actions. Why the Department should receive special treatment in these cases implicating a parent's fundamental constitutional rights is inconceivable to me.

¶48 A natural parent's right to the care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *See, e.g., In re V.F.A.*, 2005 MT 76, ¶ 6, 326 Mont. 383, ¶ 6, 109 P.3d 749, ¶ 6. I daresay it is commonly perceived that, more often than not, the "cards are stacked" against a parent in these types of proceedings from the time of the Department's initiating petition or action. However broad a trial court's discretion, I believe that discretion must be exercised in a more thoughtful and balanced manner in these kinds of cases involving a fundamental liberty interest. Placing more burden on a parent by denying reasonable written discovery strikes me as facially unfair and dangerously close to a denial of due process. Moreover, if the Department cannot adequately--but fairly--process these cases, the remedy is to seek more resources from the Legislature. The remedy is *not* for a trial judge to tell the parent that discovery is obtainable in a "more convenient, less burdensome and less expensive manner" when it is altogether clear that only the Department's convenience, burden and expense are being considered.

¶49 The Court observes that the Mother has not established prejudice. I can only question how she could do so absent the discovery she sought. Without either admissions or denials, how could she establish that the Department had changed its position later to her detriment? Without the Department's express identification of its expert witnesses, how could she know how best to prepare for expert testimony?

17

¶50    Finally, I cannot join the Court's "caution"--apparently addressed to the Department and trial courts--that parents have the full right to discover the case against them. As noted above, we continue to "caution" about compliance with the law. Our cautions apparently fall on deaf ears. How can the Court be looking "askance" at blanket denials or other discovery orders which hinder a parent's full right to discovery when, in the same opinions, it countenances the blanket denial of reasonable numbers of requests for admissions and interrogatories, common modes of discovery explicitly authorized by the rules of civil procedure?

¶51    We are all protective of the best interests of Montana's children, as well we should be. In my view, however, we must do better than this with regard to ensuring that parents' rights to fundamentally fair proceedings also receive at least minimal protection. If we do not do so when we can, the termination of parental rights in Montana will become *pro forma*. And that will be a *sad* day for Montana.

¶52    I dissent from the Court's affirmance on the discovery issue. I would reverse the District Court.

/S/ KARLA M. GRAY

Justice James C. Nelson concurs and dissents.

¶53    I join Chief Justice Gray's concurring and dissenting Opinion.

¶54    I write separately to point out that, as noted by the Court, we did hold in *In re A.S.*, 2004 MT 62, ¶¶ 20, 23, 320 Mont. 268, ¶¶ 20, 23, 87 P.3d 408, ¶¶ 20, 23, that parents have due process rights to effective assistance of counsel in termination proceedings. In our Opinion, we specifically stated that part and parcel of the effective assistance paradigm is:

18

(2) Advocacy. This inquiry includes whether counsel has adequately investigated the case; whether counsel has timely and sufficiently met with the parent and has researched the applicable law; whether counsel has prepared for the termination hearing by interviewing the State's witnesses *and by discovering and reviewing documentary evidence that might be introduced*; and whether counsel has demonstrated that he or she possesses trial skills, including making appropriate objections, producing evidence and calling and cross-examining witnesses and experts.

*A.S.,* ¶ 26 (citation omitted) (emphasis added).

¶55 Given our direction to counsel representing parents in termination proceedings--and, concomitantly, to the district courts--counsel should not be faulted for attempting to discover the State's case using recognized tools pursuant to the Montana Rules of Civil Procedure. That some discovery requests may be objectionable, does not justify throwing the baby out with the bath water by way of blanket protective orders. Objectionable discovery requests, unfortunately, infect most civil proceedings.

¶56 Three mandates follow from our decision in *A.S.*: First, local departments and county attorneys throughout the State should adopt practices and procedures that will facilitate full and expeditious discovery in termination cases. Second, counsel for the parents should utilize appropriate discovery tools in termination proceedings--appropriate meaning, in my view, those which will aid in the discovery of relevant evidence and the search for truth; not those which will simply delay the proceeding and frustrate the State's and the courts' efforts to perform their respective statutory duties. Three, trial judges should exercise their discretion in discovery matters in termination proceedings in the same manner as in any other civil proceeding. Termination cases should not be singled out for special treatment--treatment which typically favors the Department to the prejudice of the parents' rights of due process to discover the State's case.

¶57 I concur and dissent.

/S/ JAMES C. NELSON