No. 03-343

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 352

IN THE MATTER OF

T.J.H., J.H., J.L., and A.L.,

      Youths In Need Of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 2000-082,
Honorable Diane G. Barz, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nancy G. Schwartz, Attorney at Law, Billings, Montana

      For Respondent:

          Honorable Mike McGrath Attorney General; Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

          Patrick E. Kenney, Billings, Montana (Guardian Ad Litem)

Submitted on Briefs: November 6, 2003

Decided: December 18, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      This is an appeal by the natural mother, B.J.H., of an order terminating her parental rights to her four children, T.J.H., J.H., J.L., and A.L.  The natural fathers of T.J.H. and J.H. have not appealed.  W.L., the natural father of J.L. and A.L., withdrew his appeal.  We affirm the order of the District Court.

¶2      B.J.H. presents the following two issues on appeal:

¶3      1.  Did the termination proceedings comply with the Indian Child Welfare Act (ICWA)?

¶4      2.  Is the termination of parental rights supported by substantial evidence?

## BACKGROUND

¶5      The Department of Public Health and Human Services (the Department) first established contact with B.J.H. in 1991, when she attempted suicide while four months pregnant.  Subsequent reports established on-going alcohol, drug, and physical abuse, in addition to unsanitary living conditions.  The children were originally removed from the home as a result of T.J.H.'s having run away in 2000.  The relationship between B.J.H. and W.L. is extremely volatile.  B.J.H. and W.L. would repeatedly break-up and then reconcile. The initial court-ordered treatment plans contemplated that B.J.H. and W.L. would improve their behavior and relations with counseling.  In late 2001, B.J.H. and W.L. were living together again, going to marriage counseling and attempting to comply with the treatment plan.  The children were returned to B.J.H.'s home at that time.  However, the situation again deteriorated, with serious issues regarding the volatility of B.J.H.'s relationship with

2

W.L., sanitation, emotional stability, relapsing drug use, and means of legal support for the children. A new treatment plan was ordered, and in contravention of its terms, B.J.H. and W.L. continued to see each other. This culminated in a domestic disturbance in 2002, during which B.J.H. punched W.L. in the head and put his head through a kitchen window pane. The Department once again took the children away. Since that time, B.J.H. has shown neither improvement nor compliance with her treatment plans.

¶6 It originally appeared to the Department that J.L. and A.L. might be "Indian children" through W.L.'s membership in the Turtle Mountain band of the Chippewa. However, a letter from the Tribe indicated that the children were not eligible for membership.

STANDARD OF REVIEW

¶7 We review a district court's decision to terminate parental rights to determine whether the court abused its discretion. *Matter of K.S.*, 2003 MT 212, ¶ 8, 317 Mont. 88, ¶ 8, 75 P.3d 325, ¶ 8. The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *Matter of A.F.,* 2003 MT 254, ¶ 12, 317 Mont. 367, ¶ 12, 77 P.3d 266, ¶ 12. In order to satisfy the statutory requirements for a termination of parental rights, a district court must make specific factual findings. *Matter of A.F.,* ¶ 12. We review those findings of fact to determine whether they are clearly erroneous. *Matter of C.H.,* 2003 MT 308, ¶ 8, 318 Mont. 208, ¶ 8, ___ P.3d ___, ¶ 8. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm

3

conviction that the district court made a mistake. *Matter of K.S.,* ¶ 8. We review a district court's conclusions of law to determine whether the court correctly interpreted the law. *Matter of A.F.,* ¶ 12. Because a parent's right to the care and custody of a child is a fundamental right, that right must be protected by fundamentally fair procedures. *Matter of D.V.,* 2003 MT 160, ¶ 14, 316 Mont. 282, ¶ 14, 70 P.3d 1253, ¶ 14. However, a court's paramount concern is the best interest of the children, *Matter of D.V.,* ¶ 15, and primary concern shall be given to the physical, mental, and emotional conditions and needs of the children. Section 41-3-609(3), MCA.

## DISCUSSION

¶8      1.  Did the termination proceedings comply with the Indian Child Welfare Act (ICWA)?

¶9      We recently reiterated that the principal purpose of ICWA is to "promote the stability and security of Indian tribes by preventing further loss of their children; and to protect the best interests of Indian children by retaining their connection to the tribes." *Matter of C.H.,* ¶ 11. Through the grant of extra procedural safeguards, ICWA seeks to reduce the alarmingly high percentage of Indian families broken up by the removal of their children. 25 U.S.C. § 1901(4). ICWA's procedural safeguards and requirements include notice to the putative tribe; extra time for the tribe and parents to respond; appointment of counsel; a tribe's right to intervene; imposition of the higher evidentiary standard of "beyond a reasonable doubt" which must be supported by a qualified expert witness; and the right of

the tribe or the parents to invalidate a parental rights termination proceeding for an infraction of ICWA.  25 U.S.C. § 1912(a), (b) and (f); § 1911(c); § 1914.

¶10     However, the procedural safeguards of ICWA only apply when a court has reason to know that a child may be an Indian child as defined by the Act.  25 U.S.C. § 1912(a); *see, e.g., In Re Adoption of Riffle* (1995), 273 Mont. 237, 242, 902 P.2d 542, 545.  "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  25 U.S.C. § 1903(4).

¶11     A child's tribe should be contacted at the earliest possible time so that it may assist in providing the services which an Indian tribe is uniquely situated to provide that child.  *Matter of C.H.,* ¶ 22.   The Bureau of Indian Affairs has issued non-binding Guidelines to assist state courts in applying ICWA. Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584.  Under the section titled "Pretrial requirements,"  the Guidelines provide that "when a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe."  Guideline B.1.(a), 44 Fed. Reg. 67,586.  Furthermore, as we recognized in *Riffle,* 273 Mont. at 242, 902 P.2d at 545, the tribe's determination that a child is or is not eligible for membership is conclusive. Guideline B.1.(b), 44 Fed. Reg. 67,586.

¶12     In light of W.L.'s tribal membership, the Department recognized the present case might involve two "Indian children."   Here, the Department diligently contacted the

children's alleged Tribe to first determine whether or not the children were members. The Tribe responded with a letter from Marilyn Poitra, ICWA coordinator for the Turtle Mountain Band of Chippewa Indians. Poitra's letter states the children were not members nor were they eligible for membership.

¶13 B.J.H. contends the letter from the Tribe was improperly admitted because it was hearsay. B.J.H. argues that without the letter, we must conclude that the children were Indian children; that the extra procedural safeguards of ICWA apply, and the notice which was sent to the Tribe was insufficient to meet the terms of the Act.

¶14 We note, however, that the letter was not the only evidence establishing that the children were not Indian children as defined by ICWA. W.L., the children's father, testified that he was a member of the Turtle Mountain Band of the Chippewa, that at one time he was considered to be five-eighths blood quantum, but the Tribe downgraded his status to one-half and then down to three-eighths. Also, prior to the admission of the Tribe's letter, social worker Pam Weischedel testified that because W.L. was three-eighths, he met the Tribe's blood quotient standard of one-quarter, but his children would have three-sixteenths and fall just below that standard. Further, Weischedel indicated the Department had engaged in active efforts to ascertain whether the children were Indian children and had concluded that they were not. Similarly, two other social workers gave testimony regarding the children's ineligibility, to which no objection was made.

¶15 Apart from the letter, there was sufficient evidence establishing that the children were not Indian children for purposes of ICWA. Therefore, we need not address the admissibility

6

of the Tribe's letter or any alleged errors in failing to meet the procedural safeguards of ICWA.

¶16    2.  Is the termination of parental rights supported by substantial evidence?

¶17    A district court may terminate the parent-child legal relationship when the child is adjudicated a youth in need of care and both of the following exist:

> (i)  an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Section 41-3-609(f), MCA.

¶18    In the present case, it is undisputed that the children were adjudicated youths in need of care.  B.J.H. had six court-approved treatment plans.  At issue here is whether or not she successfully completed her treatment plans.  We have previously upheld termination of parental rights where substantial evidence demonstrates a failure to meet the terms of the treatment plans.  *Matter of C.H.,* ¶ 26 (citations omitted).  Here, the substantial evidence supports the District Court's findings that B.J.H. did not comply with her treatment plans. All three social workers involved in the case testified that B.J.H. did not fully comply with her treatment plans nor successfully attain the goals.  Social worker Pierce testified that B.J.H. never followed through with any goals, she had positive urinalysis (UA) for marijuana, and did not submit UAs for eight months.  Social worker Weischedel also testified about positive UA results, missed meetings and counseling sessions; furthermore, she testified that B.J.H.'s belligerence, screaming, and profanity were unusual.  Social worker

7

Erickson testified about other positive UA results, B.J.H.'s failure to maintain a job or stable income, and her failure to attend AA meetings or regular one-on-one counseling. Further, while the children were back in B.J.H.'s care, they missed medical, dental, counseling, and daycare appointments. B.J.H. contradicted the testimony of the three social workers to some degree, and assigned blame for her failures in meeting the goals of her treatment plans.

¶19 Here, B.J.H. had a proven inability to deal with one of the major goals of each of her treatment plans. She never effectively dealt with her relationship with W.L. Although the treatment plans vacillated between attempting to keep them apart and attempting to allow them to reestablish their relationship through counseling, the last domestic disturbance issue clearly established that B.J.H. and W.L. were not able to conduct a healthy relationship. Yet, they continued to have an "on again, off again" relationship. At the time of the parental rights termination hearing, they were both living in W.L.'s house, in contravention of the terms of the treatment plan which required B.J.H. to establish a home of her own separate from W.L.

¶20 The record shows that although B.J.H. may have taken some positive steps towards addressing the goals listed in her treatment plans, she did not comply with the treatment plans nor did she successfully complete them. Further, the conduct and conditions which made B.J.H. unfit were unlikely to change within a reasonable time. The findings of fact of the District Court are not clearly erroneous.

¶21 We affirm the order of the District Court.

/S/ W. WILLIAM LEAPHART

8

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM REGNIER
/S/ PATRICIA COTTER