No. 04-357

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 81

IN RE THE MATTER OF

A.G., W.G., T.A., J.A.,

Youths in Need of Care.

APPEAL FROM:     District Court of the Fourth Judicial District,
                 In and for the County of Missoula, Cause No. DN-2002-8,
                 The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

        For Appellant Mother:

                Paulette C. Ferguson, Attorney at Law, Missoula, Montana

        For Respondent Guardian Ad Litem:

                Heather M. Latino, Paoli & Shea, P.C., Missoula, Montana

        For Respondent State of Montana:

                Hon. Mike McGrath, Attorney General; Ilka Becker,
                Assistant Attorney General, Helena, Montana

                Shaun Donovan, Mineral County Attorney, Superior, Montana

                        Submitted on Briefs:  February 23, 2005

                        Decided:  March 30, 2005

Filed:

        _____
                            Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Appellant D.M.G., a Chippewa Indian, appeals from the decision of the Fourth Judicial District Court, Mineral County, terminating her parental rights to A.G., W.G., T.A., and J.A.  We reverse and remand.

¶2    We must decide whether the District Court erred in determining that A.G., W.G., T.A., and J.A. were not "Indian children" pursuant to the Indian Child Welfare Act (ICWA) before it terminated D.M.G.'s parental rights.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    D.M.G. (the mother) is the natural mother of four children: A.G.(8), W.G.(7), T.A.(5), and J.A.(3) (the children).  The mother claims enrollment as a member of the Turtle Mountain Chippewa Band of Chippewa (the Chippewa) and the children's maternal grandmother asserts enrollment as a member of the Blackfeet Tribe of the Blackfeet Indian Reservation of Montana (the Blackfeet).  J.A. and T.A. share the same father and W.G. and A.G. have different fathers.  None of the fathers claim tribal enrollment and none challenge the termination of his parental rights.

¶4    The Department of Public Health and Human Services, Child and Family Services (the Department) received a referral in November 2002 indicating that the mother had been incarcerated for failing to comply with parole conditions imposed from an earlier arrest.  The Department had investigated several previous referrals concerning the mother and the children.  Following this latest investigation, the Department filed a petition for emergency protective service and temporary investigative authority claiming that the children's parents exposed them to abuse and neglect.  The District Court granted the petition and the

2

Department removed the children temporarily from the mother's custody.

¶5     After the Department removed the children to temporary care facilities, a Department social worker sent a request to the Chippewa and Blackfeet (the Tribes) for clarification of the children's status as "Indian children" for purposes of ICWA.  Both Tribes responded with letters indicating that further information would be necessary to establish definitively the children's enrollment status.  Nevertheless, the social worker unilaterally determined that the children were not "Indian children" and therefore ICWA did not apply.

¶6     Thereafter, the Department petitioned the District Court to have the children adjudicated youths in need of care and for temporary legal custody.  The court granted the order and minutes from the hearing indicate the court requested that the Department produce evidence of the children's Indian status.  The Department then entered an affidavit from the same social worker who previously had determined the children were not "Indian Children" based upon the letters from the Tribes.

¶7     The Department next petitioned the District Court for permanent legal custody of the children and termination of the mother's parental rights.  The District Court held a termination hearing on March 10 and 11, 2004, during which it considered the letters to the social worker from the Tribes regarding the children's possible tribal affiliation and possible ICWA application.  The court also heard evidence from the mother and the children's grandmother concerning the children's eligibility for tribal enrollment.  The mother entered a letter from the Blackfeet indicating it would intervene on her behalf and that ICWA applied to the children.  Without attempting to reconcile this contradictory evidence, the District Court concluded that the children were not "Indian children" under ICWA for purposes of

3

the termination hearing.

¶8 The court issued an order on March 15, 2004, granting both Tribes an opportunity to intervene solely on the issue of the children's permanent placement. It directed the Tribes to file a motion to intervene, together with supporting memoranda, affidavits or other documents, before April 10, 2004.

¶9 The District Court issued its Findings of Fact, Conclusions of Law and Order Terminating Parental Rights on March 25, 2004. The court terminated the mother's parental rights at that time. More importantly, the court concluded that the Tribes were given appropriate notice of the children's position, despite the fact that its own April 10, 2004, deadline for intervention had not yet passed. The court further determined that the children "did not appear to be eligible" for tribal enrollment.

¶10 Six days later, the Blackfeet filed its timely notice of intervention pursuant to ICWA, 25 U.S.C. § 1911(c). The Blackfeet also sought to preserve its right to motion the court for a transfer of jurisdiction to the Blackfeet Tribal Court under 25 U.S.C. § 1911(b). The District Court issued an order granting the Blackfeet's intervention on April 16, 2004. The District Court record indicates no further involvement by the Blackfeet.

¶11 The mother now appeals from the order terminating her parental rights.

**STANDARD OF REVIEW**

¶12 We review a district court's decision to terminate parental rights to determine whether the court abused its discretion. *In re F.M.*, 2002 MT 180, ¶ 21, 311 Mont. 35, ¶ 21, 53 P.3d 368, ¶ 21. The trial court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice.

4

*In re D.V.*, 2003 MT 160, ¶ 14, 316 Mont. 282, ¶ 14, 70 P.3d 1253, ¶ 14. A district court must make specific fact findings in accordance with statutory requirements before terminating parental rights. *In re J.V.*, 2003 MT 68, ¶ 7, 314 Mont. 487, ¶ 7, 67 P.3d 242, ¶ 7. We review the court's findings to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct. *In re T.C.*, 2001 MT 264, ¶ 13, 307 Mont. 244, ¶ 13, 37 P.3d 70, ¶ 13.

## DISCUSSION

¶13 Whether each of the children is an "Indian child" within the meaning of ICWA represents the threshold inquiry in this case. ICWA defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). Tribes have the sole power to determine tribal membership unless otherwise limited by statute or treaty. *See Adams v. Morton* (9th Cir. 1978), 581 F.2d 1314, 1320. A child's eligibility for tribal membership presents a question of fact dependent on his or her actual ancestry. *In re the Adoption of a Child of Indian Heritage* (N.J. 1988), 543 A.2d 925, 933.

¶14 "When a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe." Guidelines for State Courts; Indian Child Custody Proceedings B.1.(a), 44 Fed.Reg. 67,586 (1979). Moreover, we have held for ICWA determination purposes that tribes have ultimate authority to decide who qualifies as an "Indian child." *See In re Adoption of Riffle* (1995), 273 Mont. 237, 242, 902 P.2d 542,

5

545 (holding a tribe's determination conclusive regarding the eligibility or enrollment status of a child as an "Indian child" and not guidelines promulgated by the Department of the Interior).

¶15 We recognize that substantial evidence in the record would support a decision to terminate the mother's parental rights. Before reaching the termination issue, however, the District Court failed to resolve definitively the threshold question of whether the children were "Indian children" within the meaning of ICWA. The mother and grandmother notified the court of the children's potential status as "Indian children" under ICWA and the court should have verified the children's possible Indian status before proceeding to terminate the mother's parental rights. *See e.g. In re T.J.H.*, 2003 MT 352, ¶ 10, 318 Mont. 528, ¶ 10, 81 P.3d 504, ¶ 10 (holding that ICWA applies when a court has reason to know that a child may be an Indian child as defined by the Act).

¶16 In its order terminating parental rights, the District Court found that the children were not eligible for membership in an Indian tribe. The District Court made this determination solely based on the testimony from the social worker and the letters from the Tribes casting the children's Indian status into question. No party, including the Tribes, presented conclusive evidence, however, whether the children were members or eligible for membership in either of the Tribes. Although the court entered an order granting both Tribes an opportunity to intervene exclusively on the issue of the children's permanent placement–and indeed the Blackfeet filed a motion to intervene and reserve its right to transfer jurisdiction–the record indicates no further involvement by the Tribes. Absent a conclusive determination by the Tribes that the children were not members or were not

6

eligible for membership in the Tribes, and thereby not "Indian children" under ICWA, however, the District Court should not have proceeded on the matter of parental rights or placement. *Riffle*, 273 Mont. at 242, 902 P.2d at 545.

¶17 The parties presented the District Court insufficient evidence in this case to make a finding regarding the children's Indian status. Although we recognize the inherent difficulty that the District Court faced in dealing with the complex nature of ICWA and its provisions, under these circumstances "it behooves us to take great pains to ensure that the prerequisites of ICWA have been satisfied." *In re C.H.*, 2003 MT 308, ¶ 21, 318 Mont. 208, ¶ 21, 79 P.3d 822, ¶ 21. The District Court could not honor the prerequisites in this case due to the mother's failure to present crucial evidence regarding the children's possible tribal affiliation and the tribe's delay in intervening. We note, however, that a tribe's right to intervene is not impaired if it does not intervene promptly after receiving notice. *In re A.P.*, 1998 MT 176, ¶ 26, 289 Mont. 521, ¶ 26, 962 P.2d 1186, ¶ 26 (citation omitted). The District Court, admittedly limited by the evidence presented, should not have proceeded on the matter of parental rights or placement absent a conclusive determination by the Tribes that the children were not members or were not eligible for membership. *Riffle*, 273 Mont. at 242, 902 P.2d at 545.

¶18 Therefore, after a careful review of the record, we conclude that the District Court's finding regarding the children's status was clearly erroneous under these circumstances. We remand this case to the District Court for further determinations on whether the children are members or eligible for membership in either of the Tribes. Reversed and remanded.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER