DA 15-0491

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 40N

IN THE MATTER OF:

M.A.W., M.L.W, and K.R.T.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause Nos. DN 14-12D, DN 14-13D, DN 14-14D
Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Elizabeth Thomas, Elizabeth Cunningham Thomas, PLLC, Hebron, Ohio

       For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Edward J. Corrigan, Flathead County Attorney, Anne Lawrence, Deputy County Attorney, Kalispell, Montana

          Submitted on Briefs:  January 6, 2016

                 Decided:  February 16 2016

Filed:

                                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 N.N. (Mother) appeals three orders of the Eleventh Judicial District Court, Flathead County, terminating her parental rights to her children, M.A.W., M.L.W, and K.R.T., ages 11, 9, and 7 at the time of termination. The three appeals were consolidated and this memorandum opinion is applicable to each. Mother argues that the Department of Public Health and Human Services (Department) failed to provide clear and convincing evidence that she was unlikely to change within a reasonable amount of time and that she should have been given more time to complete her treatment plan. She suggests that "guardianship was an appropriate disposition in lieu of termination."

¶3 On March 5, 2014, the Department received a report with concerns that Mother had been using methamphetamine that morning and would be unable to care for her children when they returned home from school because she was hallucinating. Child Protective Services Specialist Nicole Doyle assessed Mother's condition and observed her to be hallucinating and under the influence of drugs. Mother admitted to Doyle that she had been using methamphetamine and had taken three prescription Klonopins that day. M.A.W. and M.L.W. were placed in foster care in Flathead County and K.R.T. was placed with her birth father.

¶4 The following day, Doyle met with Mother again and discussed Mother's drug use and a possible plan for her. Doyle requested that Mother submit to urinalysis (UA) testing and a chemical dependency evaluation. Mother tested positive for methamphetamine, morphine, and hydrocodone on March 14 and March 19, 2014. On March 27, 2014, the Department filed a Petition for Emergency Protective Services, Adjudication of the Child as a Youth in Need of Care and Temporary Legal Custody for each child.

¶5 The District Court held a show cause hearing on April 15, 2014, after which it adjudicated the children as Youths in Need of Care, granted the State Temporary Legal Custody of the children for six months, and ordered the development of a treatment plan for Mother.

¶6 In September 2014, the Department petitioned the District Court for an extension of temporary legal custody of the children to give Mother additional time to complete her treatment plan. All parties stipulated to the Petition and a hearing was held on November 7, 2014. At the hearing, the court was advised that Mother had not followed through with recommended inpatient chemical dependency treatment as she had failed to appear for her scheduled bed date at the Montana Chemical Dependency Center (MCDC). Mother also had not addressed additional concerns in her treatment plan and had not maintained any period of sobriety. The court granted the Department's petition on November 24, 2014.

¶7 Following the extension of temporary legal custody, Mother continued to miss scheduled UAs and to test positive for opiates. Mother again was admitted for inpatient

treatment at the MCDC, but left against medical advice after approximately three days. Mother also continued to miss scheduled visits with her children and did not follow any recommendations made by her visitation supervisor. When Mother did attend visits with her children, Family Concepts Staff noted that she appeared intoxicated, would fall asleep during visits, and would have changes in behavior during the course of the visits. The Family Concepts visitation supervisor noticed that the children sometimes appeared distressed after visits with Mother. In addition, the majority of UAs Mother completed at the visits tested positive for drugs.

¶8 Mother completed a psychological evaluation with Edward H. Trontel, Ph.D., in February. Trontel diagnosed Mother with Opioid Use Disorder, Amphetamine-type Substance Use Disorder, Generalized Anxiety Disorder, Persistent Depressive Disorder, and Personality Disorder NOS. Trontel noted that Mother's parenting failures were "direct results of drug addiction" and that Mother's drug use was her "primary obstacle to resuming parenting duties." Trontel recommended that Mother obtain sobriety before beginning psychotherapy.

¶9 On May 6, 2015, the Department petitioned the District Court for termination of Mother's parental rights with permanent legal custody and right to consent to adoption, and for approval of permanency plans for the children. The Department stated that Mother had "failed to successfully complete her Court-ordered treatment plan and the conduct/condition rendering her unfit to parent is unlikely to change within a reasonable time due to her excessive use of narcotic or dangerous drugs that affects her ability to care and provide for the child[ren]."

4

¶10     The court held a hearing on July 20, 2015.  Mother's social worker, addictions counselor, clinical psychologist, drug screening counselor, and Family Concepts counselors were among those who testified on behalf of the Department.  Mother testified on her own behalf.  The Department's witnesses testified about Mother's failures in completing her treatment plan, referring to the missed and positive UAs, missed bed dates at MCDC, inconsistent visitations with her children, and inability to maintain any level of sobriety in order to begin counseling on her mental-health issues.  The Child Protective Services Supervisor testified that the children require long-term stability and sober persons making decisions on their behalf, and that without closure and a plan to move forward, the children would be prevented from making great strides. She also testified that the children were "thriving" in their current families.

¶11     Mother testified that she now was ready to enter treatment after a wake-up call from K.R.T., who had asked Mother if she cared more about drugs than about her children.  Mother testified that she was ready to schedule another bed date at the MCDC and to complete inpatient treatment. Mother requested either a six-month extension or guardianship for all three children with their paternal aunt and uncle instead of termination.  On cross-examination, Mother admitted to using morphine on July 4, 2015—sixteen days before the hearing.  Mother stated that she used morphine on July 4 because it was the anniversary of the death of M.A.W.'s and M.L.W.'s father and, "how could I say no?"

¶12     The District Court entered Findings of Fact, Conclusions of Law, and Orders terminating Mother's parental rights and awarding permanent legal custody to the

Department with lawful authority to consent to the children's adoption. Mother appeals the District Court's termination of her parental rights.

¶13 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re C.M.*, 2015 MT 292, ¶ 11, 381 Mont. 230, 359 P.3d 1081. We review a district court's findings of fact for clear error and its conclusions of law for correctness. *In re D.B.*, 2008 MT 272, ¶ 13, 345 Mont. 225, 190 P.3d 1072.

¶14 A court may terminate parental rights to a child if it finds by clear convincing evidence that the child is an adjudicated youth in need of care and both of the following exist: (i) the parent has not complied with an appropriate court-approved treatment plan, and (ii) the parent's conduct or condition rendering her unfit is unlikely to change within a reasonable time. Section 41-3-609(f), MCA.

¶15 On appeal, Mother does not contest the adjudication of the children as youths in need of care or the determination that she did not complete her treatment plan. She argues that the Department did not provide clear and convincing evidence that she was unlikely to change within a reasonable time because the Department did not show that she could not be successful once she committed to treatment. Mother points out that she testified that she had been working to secure another bed date at MCDC, and that the conversation with K.R.T. "had really opened her eyes to the severity of the problem and was significant in her decision to commit to treatment." Mother argues that because she had not made any "real attempts at treatment it was speculative to find that she was unlikely [to] change if she received treatment."

6

¶16 In order to conclude that the conduct or condition rendering a parent unfit is unlikely to change within a reasonable time, a district court must find that continuing the parent-child legal relationship "will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA. In making this determination, a court must consider the following non-exclusive factors: emotional illness, mental illness, or mental deficiency of the parent; a history of violent behavior by the parent; excessive use of drugs or alcohol by the parent; and any present judicially ordered long-term confinement of the parent. Section 41-3-609(2), MCA. A court also must consider "past and present conduct of the parent." *In re J.C.*, 2003 MT 369, ¶ 11, 319 Mont. 112, 82 P.3d 900. A parent's past behavior may be considered in determining whether the parent would become a fit parent in the future. *In re L.V-B.*, 2014 MT 13, ¶ 23, 373 Mont. 344, 317 P.3d 191.

¶17 The District Court entered findings of fact, supported by the record, and concluded that Mother's consistent drug use rendered her unable or unfit to parent and was unlikely to change within a reasonable time. The court concluded that continuation of the parent-child legal relationship would likely result in continued abuse or neglect due to Mother's past and present "excessive use of narcotic or dangerous drug that affects her ability to care and provide for the child[ren]."

¶18 A parent's right to the care and custody of a child is a fundamental liberty interest that must be protected by fundamentally fair procedures. *In re D.B.*, 2007 MT 246, ¶ 17, 339 Mont. 240, 168 P.3d 691. A court's paramount concern in a termination proceeding,

7

however, is the best interest of the children, and primary consideration is given to the physical, mental, and emotional conditions and needs of the children. *In re T.J.H.*, 2003 MT 352, ¶ 7, 318 Mont. 528, 81 P.3d 504 (citations omitted). When a child has been in foster care for fifteen of the last twenty-two months, "the best interests of the child must be presumed to be served by termination of parental rights." Section 41-3-604(1), MCA.

¶19 The District Court found that Mother's "lack of affirmative efforts to resume custody of [her children] indicates an unwillingness and/or inability to exercise her fundamental rights in a responsible manner." The court noted that the children had been in the custody of the Department for sixteen out of the most recent twenty-two months while Mother had failed to complete her treatment plan or to remedy the conditions that led to the children's removal. The court found that the children "need[] to know who [they] can rely upon for [their] care; as such, termination for the sake of permanency in this instance is proper."

¶20 Our review of the record convinces us that the District Court appropriately gave primary consideration to the needs of the children. There is substantial evidence of Mother's infrequent and inconsistent efforts in completing the required tasks in her treatment plan. The District Court did not misapprehend the effect of the evidence in reaching its conclusion that Mother is unlikely to change within a reasonable time. A district court has discretion under the law to afford a parent more time to achieve sobriety where the parent is making progress. Section 41-3-442(4)(a)(i), (6), MCA. In this case, however, Mother did not show meaningful signs of engaging in treatment for sixteen months. The substantial evidence of Mother's continued drug use supports the court's

8

conclusion that continuing the parent-child legal relationship likely will result in continued abuse or neglect. Although Mother's long inability to recognize the disastrous effects of her drug use is not an uncommon attribute of addiction, the law does not require children to wait for permanency until a parent's wake-up call produces meaningful results. *In re Custody & Parental Rights of D.A.*, 2008 MT 247, ¶ 26, 344 Mont. 513, 189 P.3d 631. The evidence showed that Mother had not taken concrete steps toward successful inpatient treatment and that, even if she did, she would not be ready to resume parenting her children unless and until she demonstrated persistent abstinence from drugs. Accordingly, we conclude that the District Court did not abuse its discretion.

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the appeal is resolved by the applicable standard of review. The District Court's factual findings are supported by the record, and the court did not clearly err in finding that Mother was unlikely to change within a reasonable period of time. The District Court's judgments terminating Mother's parental rights to M.A.W., M.L.W, and K.R.T. are affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA