No. DA 06-0207

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 101

FREDERICK J. FISCHER,

        Petitioner and Respondent,

   v.

RUBY M. FISCHER,

        Respondent and Appellant.

APPEAL FROM:    The District Court of the Third Judicial District,
                 In and For the County of Deer Lodge, Cause No. DR 01-127,
                 Honorable Ted L. Mizner, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Daniel R. Sweeney, Attorney at Law, Butte, Montana

        For Respondent:

            Patrick T. Gallagher, Skakles & Gallagher, Anaconda, Montana

                            Submitted on Briefs:  January 17, 2007

                                    Decided:  April 24, 2007

Filed:

                 _____
                             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Ruby M. Fischer (Ruby) appeals from the order of the Third Judicial District Court, Deer Lodge County, granting Respondent Frederick J. Fischer's (Frederick) motion for appointment of temporary guardians for their son, Jeret Fischer (Jeret), and appointing Barry and Angie Woods and Frank Austin as Jeret's co-guardians. We reverse.

¶2 We consider the following issues on appeal:

¶3 (1) Is the order granting Frederick's request for a temporary guardianship of Jeret an appealable order?

¶4 (2) Did the District Court err by appointing temporary guardians of Jeret over the objection of Ruby, Jeret's mother?

## BACKGROUND

¶5 Frederick and Ruby Fischer were married on August 13, 1994, and had one child, Jeret, who was born on May 24, 1993. In April 2004, the parties dissolved their marriage and entered a stipulated parenting plan which was approved by the District Court. Under the plan, Frederick was designated as primary custodian of Jeret, while Ruby was awarded visitation every other weekend.

¶6 Frederick and Jeret moved to Billings, Montana, in April 2005, and have lived in the home of friends Barry and Angie Woods since then. Frederick is employed by the U.S. Army Reserve in Billings, and Jeret attends school in Billings. Ruby resides in Butte with her ailing father for whom she provides care.

2

¶7 In December 2005, Frederick received orders to report for active duty to Iraq on January 8, 2006. On December 20, 2005, Frederick filed a motion for an emergency hearing regarding Jeret. He sought, on the recommendation of Jeret's counselor, Lynn Pillman (Pillman), to have Barry and Angie Woods and Frank Austin, Ruby's brother, who also lives in Butte, Montana, appointed as temporary legal guardians of Jeret.[1] Upon being served with the motion, Ruby filed a motion to dismiss. After briefing and oral argument, the District Court granted Frederick's motion for temporary guardianship of Jeret. Ruby appeals.

## STANDARD OF REVIEW

¶8 This Court reviews a district court's conclusions of law related to the appointment of a guardian to determine if they are correct. *In re Guardianship of D.T.N.*, 275 Mont. 480, 483, 914 P.2d 579, 580 (1996) (citation omitted). We review findings of fact to determine whether they are clearly erroneous. *D.T.N.*, 275 Mont. at 483, 914 P.2d at 580 (citations omitted).

## DISCUSSION

*¶9 (1) Is the order granting Frederick's request for a temporary guardianship of Jeret an appealable order?*

¶10 As a preliminary matter, Frederick argues this appeal must be dismissed because the District Court's temporary guardianship order is not appealable under M. R. App. P. 1, which allows appeals from a final judgment or special order made after final judgment.

---

[1] After Ruby informed Pillman that she had recently been awarded Social Security Disability based on mental illness, namely, severe depression, Pillman opined that it was unreasonable to presume Ruby was capable of providing for Jeret.

He notes that this Court has held "that orders of temporary custody are not 'final judgments,' subject to direct appeal, but instead are interlocutory orders from which this Court will grant relief in extraordinary circumstances." *In re D.A.*, 2003 MT 109, ¶ 19, 315 Mont. 340, ¶ 19, 68 P.3d 735, ¶ 19. Frederick reasons that the granting of his request for appointment of a guardian is temporary, because the order automatically terminates on Frederick's return from Iraq or on further order of the court.

¶11 Ruby responds that the order appealed from should be considered final and appealable because the District Court ruling appointed guardians of Jeret in derogation of her parental rights. Ruby also points to M. R. App. P. 1(b)(3), which allows an aggrieved party to appeal from an "order granting or refusing to grant, revoking or refusing to revoke, letters testamentary, or of administration, or of guardianship . . . ."

¶12 We have previously specifically interpreted M. R. App. P. 1(b)(3) with regard to temporary guardianship proceedings. In *Matter of Klos*, 284 Mont. 197, 201, 943 P.2d 1277, 1279 (1997), we noted that "[t]he rule defines an appealable order as an 'order granting or refusing to grant, revoking or refusing to revoke . . . guardianship,'" and concluded from this plain language that the Rule "does not differentiate between a permanent guardianship and a temporary guardianship. Thus, a district court order granting either a permanent or a temporary guardianship is appealable." *Klos*, 284 Mont. at 201, 943 P.2d at 1279.

¶13 Therefore, Ruby's appeal is properly before the Court.

***¶14 (2) Did the District Court err by appointing temporary guardians of Jeret over the objection of Ruby, Jeret's mother?***

¶15 Frederick initiated this matter by motioning the District Court, within the parties' earlier dissolution proceeding, for an emergency hearing and appointment of temporary legal guardians for Jeret, because of Frederick's forthcoming deployment to Iraq. Ruby responded by filing a motion to dismiss under M. R. Civ. P. 12(b)(6), arguing that absent a termination of her parental rights, a natural parent cannot lose the custody of his or her child in favor of a guardian. Frederick, in reply, argued that the court could modify the parties' existing parenting plan by authority of § 40-4-219, MCA, on a showing of changed circumstances and that a modification was necessary to serve the best interest of the child. Relying on § 40-4-219, MCA, and also citing §§ 40-4-228 and 41-3-427, MCA, the District Court concluded that a change of circumstances had occurred as a result of Frederick's deployment and that an amendment to the parenting plan was necessary to serve Jeret's best interests, appointed temporary guardians, and ordered that the guardianship be terminated upon Frederick's return from duty in Iraq or upon further order of the court.[2]

¶16 Ruby contends the District Court impermissibly relied on the provisions of §§ 41-3-327 and 40-4-228, MCA, and argues that Title 72, Chapter 5, MCA, governs Frederick's request for appointment of a temporary guardian for Jeret. Ruby notes that § 72-5-222(1), MCA, provides a procedure for appointment of a guardian for a minor child in derogation of a parent's rights, and allows such only if "all parental rights of

---

[2]The District Court also ordered that Ruby's rights under the existing parenting plan shall continue and remain unchanged.

custody have been terminated or if parental rights have been suspended or limited by circumstances or prior court order." She maintains that because her parental rights have never been terminated, suspended, or limited by circumstances or by prior court order, the appointment of a guardian for Jeret was invalid. Frederick responds that Ruby's parental rights were indeed limited by a prior court order, that being the parenting plan agreed upon by the parties and approved by the District Court, which limited Ruby's parenting time to every other weekend. Moreover, Frederick contends that regardless of the appointment of temporary guardians, Ruby's limited parental rights remain intact and she may enjoy those limited rights at her convenience.

¶17 As authority for its order, the District Court first cited to § 40-4-219, MCA, which provides, in pertinent part:

> **Amendment of parenting plan – mediation**. (1) The court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child.

Section 40-4-219, MCA. However, "modification of a parenting plan is based on the best interests of the children *with regard to the respective parents*." *In re Marriage of Burk*, 2002 MT 173, ¶ 19, 310 Mont. 498, ¶ 19, 51 P.3d 1149, ¶ 19 (citing § 40-4-219, MCA) (emphasis added). Section 40-4-219, MCA, merely provides a mechanism for the court to amend a parenting plan as between the parties to that agreement. It does not provide authority to decide custody matters between a child's parents and third parties, including appointment of a third party as a child's guardian.

6

¶18    Secondly, the District Court indicated that it had also relied upon § 40-4-228, MCA, although not raised by the parties.  It provides, in pertinent part:

> **Parenting and visitation matters between natural parent and third party.**  (1) *In cases when a nonparent seeks a parental interest in a child under 40-4-211* or visitation with a child, the provisions of this chapter apply unless a separate action is pending under Title 41, chapter 3.
>      (2) A court may award a parental interest to a person other than a natural parent when it is shown by clear and convincing evidence that:
>      (a) the natural parent has engaged in conduct that is contrary to the child-parent relationship; and
>      (b) the nonparent has established with the child a child-parent relationship, as defined in 40-4-211, and it is in the best interests of the child to continue that relationship.
>
>      . . . .
>
>      (5) It is not necessary for the court to find a natural parent unfit before awarding a parental interest to a third party under this section.

Section 40-4-228, MCA (emphasis added).  This provision provides standards by which a court may award a parental interest in a child to a nonparent who has brought a parenting plan proceeding pursuant to § 40-4-211, MCA.  In turn, § 40-4-211, MCA, as we have previously noted, "defines a court's jurisdictional authority for child custody or parenting proceedings under the [Uniform Marriage and Divorce Act]," *In re Parenting of D.A.H.*, 2005 MT 68, ¶ 9, 326 Mont. 296, ¶ 9, 109 P.3d 247, ¶ 9, and, specifically, allows a parenting plan proceeding to be commenced in district court "'by a person other than a parent if the person has established a child-parent relationship with the child, by filing a petition for parenting in the county in which the child resides or is found.'" *D.A.H.*, ¶ 9 (quoting § 40-4-211(4)(b), MCA).

7

¶19    Here, although Frederick asserts that the temporary guardians have "a similar relationship of parent and child" with Jeret, no nonparent has filed a parenting plan proceeding with regard to Jeret, in his residential county, pursuant to § 40-4-211, MCA. Indeed, Frederick cedes, in his Respondent's brief, that "argument that a third party has brought this case is misplaced." The relief sought by Frederick's petition was not for the establishment of a new parenting interest, but for the placement of Jeret with temporary guardians. Thus, the District Court's reliance on § 40-4-228, MCA, was incorrect.

¶20    Lastly, the District Court turned to § 41-3-427, MCA, within the child abuse and neglect statutes, and concluded that there were:

> sufficient allegations within the context of this case for this Court to find that Jeret may be in danger of being abused or neglected if he were to reside with Respondent. Placement of Jeret with Respondent would trigger an immediate investigation and placement of Jeret in emergency protective services, most likely with Barry and Angie Woods.

¶21    However, the District Court failed to note that § 41-3-427, MCA, provides "the county attorney, the attorney general, or an attorney hired by the county" with authority to file a petition when it appears a child is abused or neglected or is in danger of being abused or neglected. Such a proceeding was not initiated here. While child abuse or neglect would be relevant to a determination of a child's proper placement in a guardianship proceeding, and a proceeding *properly initiated* under § 41-3-427, MCA, is a basis for placement with a nonparent, *see* §§ 40-4-228(1) and 41-3-427(1)(a), MCA, this section does not provide independent authority for appointment of a guardian in disregard to the guardianship statutes.

¶22 In summary, the District Court erroneously relied on §§ 40-4-219, 40-4-228, and 41-3-427, MCA, in granting Frederick's motion for temporary guardianship. Ruby correctly contends that Frederick's request was governed by Title 72, Chapter 5, MCA, which the District Court did not address. That chapter provides a procedure for appointment of a guardian of a minor child, but only if "all parental rights of custody have been terminated or if parental rights have been suspended or limited by circumstances or prior court order." Section 72-5-222(1), MCA.

¶23 Frederick contends that the parenting plan approved within the dissolution action which granted only every other weekend for Ruby's parenting time constitutes an order limiting Ruby's parental rights for purposes of § 72-5-222(1), MCA.[3] However, the parenting plan approved by the court within the parties' dissolution proceeding simply determined or limited visitation that Ruby may exercise with Jeret—it did not affect the standing of Ruby's parental rights to Jeret. As an illustrative example, the parenting plan provides that "[t]he parents agree that they shall jointly make major decisions regarding the child's education, health care, religious upbringing, and recreational activities." Ruby's parental rights to Jeret were not "limited" for purposes of § 72-5-222(1), MCA, by the parenting plan. Under the statute, that requires a court order directed at a party's *right* to parent, as opposed to arrangements defining a parent's custody and visitation times with a child in a dissolution proceeding. We therefore conclude that Ruby's

---

[3]Frederick does not allege that Ruby's parental rights were terminated, suspended, or limited by circumstances, but only that Ruby's parental rights were limited by a "prior court order." Therefore, we analyze only whether the parties' parenting agreement qualified as a prior court order limiting Ruby's parental rights.

9

parental rights were not previously limited by court order, and that the District Court was without authority to appoint temporary guardians for Jeret pursuant to § 72-5-222(1), MCA.

¶24 The right of a parent to custody of their child has been recognized by this Court as being a fundamental constitutional right. *Matter of Guardianship of Aschenbrenner*, 182 Mont. 540, 544, 597 P.2d 1156, 1160 (1979) (citing *Matter of Guardianship of Doney*, 174 Mont. 282, 285-86, 570 P.2d 575, 577 (1977)). The legislature has carefully enunciated the procedures the State must follow and the findings that the court must make before custody of a child may legally be taken from his natural parent. "District Courts must identify and adhere to the proper procedure and standards to be used in the proceedings before them. Only then will the fundamental rights and relationship existing between parent and child be fully realized or, when necessary, properly severed." *Aschenbrenner*, 182 Mont. at 553, 597 P.2d at 1164. In view of these principles, we look closely at actions which interfere with that right. *Aschenbrenner*, 182 Mont. at 544-45, 597 P.2d at 1160. Our examination in this case leads us to conclude that the granting of Frederick's petition for temporary guardianship for Jeret was improper and must be reversed.

¶25 Whether the District Court's concerns about Ruby's ability to parent will ultimately be borne out must be the subject of a proper proceeding to determine the same. Her parental rights have not been abridged and therefore, a guardianship cannot be granted over her objections.

10

¶26    We reverse the entry of the order appointing temporary guardians of Jeret and remand for the entry of an order vacating the guardianship.


                                        /S/ JIM RICE


We concur:


/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS