FILED

04/13/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0402

DA 20-0402

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 86

IN THE MATTER OF THE GUARDIANSHIP OF:

J.S.M.,

   A Minor Child,

DIANA R. MERIDETH and KENNETH M. MERIDETH,

      Petitioners, Appellees and Cross Appellants,

IN THE MATTER OF THE GUARDIANSHIP OF:

J.S.M.,

   A Minor Child,

CAROL MERIDETH,

      Petitioner and Appellant.

APPEAL FROM:   District Court of the Sixth Judicial District,
               In and For the County of Park, Cause No. DG-20-09
               Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

         For Appellant:

             Kevin S. Brown, Erin E. Harris, Paoli & Brown, P.C., Livingston, Montana

         For Appellee:

             Sherine D. Blackford, Monica E. Payne, Blackford Carls P.C., Bozeman,
             Montana

                           Submitted on Briefs:  March 24, 2021

                                   Decided:  April 13, 2021

Filed:

_____
Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1    Carol Merideth appeals the Sixth Judicial District Court's order awarding temporary guardianship of her two stepchildren to their paternal grandparents, Diana Merideth and Kenneth Merideth.  Diana and Kenneth cross-appeal the court's failure to make the guardianship order a permanent one and its award to Carol, in the same order, of a right to visitation with the children at certain established times.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    J.S.M. is the ten-year-old son of Joshua Merideth and Allison Merideth.  J.S.M. has a sister, six-year-old G.R.M.[1]  Josh and Allison separated in 2016; their divorce became final in 2019, at which time the court entered a parenting plan calling for the children to reside with Josh, with Allison to have restricted parenting time.  At the time of hearing on this matter, Allison had not had any contact with the children for approximately two years; she now resides in Iowa with her other two children.  Josh married Carol in March 2020.  Two and a half months later, on June 6, 2020, he died of cancer.  From the time Josh and Allison separated, the children spent significant time with their grandmother Diana, who provided care and parenting responsibilities when Josh was working and undergoing cancer treatment.

¶3    Two days after Josh's death, Diana and Kenneth filed a petition for guardianship and requested an emergency order for temporary guardianship.  The District Court entered

---

[1] The District Court issued simultaneous orders on July 27, 2020, appointing Diana and Kenneth as temporary guardians and conservators of both children.  The parties filed separate appeals on the two matters, and the cases are before this Court on different cause numbers; we decide G.R.M.'s appeal by separate Memorandum Opinion.  *Matter of G.R.M.*, DA 20-0403.

an order two days later appointing Diana and Kenneth temporary guardians and setting a hearing the following week. That same day, Carol filed her own petition in a separate action seeking temporary guardianship and conservatorship. Carol attached to her petition the Last Will and Testament ("Will") that Josh executed approximately a week before he died, appointing Carol as the children's guardian and conservator. The District Court consolidated the two actions, continued the hearing, and entered an interim order directing that the children reside with Kenneth or Diana during the weekdays and with Carol on the weekends.[2]

¶4      The District Court held an evidentiary hearing on the petitions on July 8, 2020. Allison, Diana, and Carol all testified, and the parties each called additional witnesses in support of their respective petitions. Diana and Kenneth filed with the court Allison's written consent to their appointment as the children's guardians and conservators. Allison testified at the hearing to the circumstances of her disappearance from the children's lives and, consistent with her written consent, said that she wished to engage in reunification counseling with a licensed reunification counselor but to have the children under Kenneth and Diana's guardianship. Allison affirmed that her parental rights had never been terminated.

¶5      Diana testified to her extensive relationship with the children and to the parenting responsibilities she has assumed since Josh and Allison's separation. Diana testified that, if appointed guardian, she would be supportive of the children's relationship with Carol.

---

[2] Diana and Kenneth do not live together, but they remain married and spend time with the children together.

4

Kenneth and Diana also called the children's therapist, Sara Gentry. Carol testified to her relationship with Josh and the children and to their plans for her to adopt the children. Carol called several additional witnesses, who testified to their familiarity with Josh and Carol's relationship and with the role she played in the children's lives.

¶6 At the conclusion of the hearing, the court took the matter under advisement. It ordered in the meantime that the children would continue to reside with Kenneth or Diana during the weekdays and with Carol on weekends, except that Kenneth would have the children every Sunday morning for two hours and Carol would have them every Wednesday evening for two hours. The court advised the parties that they did not need to submit proposed findings, reminding them that it was considering only the issue of a temporary guardianship, and indicated that it needed to consider the legal issues the parties had raised before entering its decision.

¶7 The District Court entered Findings of Fact, Conclusions of Law, and an Order Appointing Temporary Guardians and Conservators on July 27, 2020. It found that the children have a very close bond with Diana and Kenneth. It found also that the children have developed a bond with Carol, enjoy spending time with her, and have enjoyed getting to know Carol's boys, who are young adults. The court found that the "longstanding and trusted relationship that the grandparents have had with the children over a very long period of time weighs heavily in favor of the grandparents being granted temporary guardianship and conservatorship." It determined that it was in the children's best interests to appoint Diana and Kenneth as their temporary guardians and conservators.

5

¶8 In its conclusions of law, the court held that Carol's testamentary appointment was void because Allison is living and has not been adjudicated incapacitated. "As the children's living natural parent," the court stated, "Allison has consented to the appointment of Diana and Ken as full and permanent guardians and conservators of the minor children. By law, her consent is presumed to be in the children's best interests."

¶9 The District Court found that the current schedule imposed under its Temporary Order—allowing the children to spend time with both of their grandparents and with Carol—is consistent with the best interests of the children. The order thus appointed Diana and Kenneth as Temporary Guardians and Conservators of the children with all the powers and duties as set forth in §§ 72-5-231 and 72-5-427, MCA. It directed Diana and Kenneth to ensure that the children continued to engage in counseling with their current therapist and to comply with her recommendations and plan for therapy. The order directed that Carol have the children on alternating weekends from 6:00 p.m. on Fridays through 6:00 p.m. on Sundays, with the exception that Kenneth have the children for a period of two hours on Sunday mornings and that Carol have them for two hours encompassing dinnertime each Wednesday. The order provided that the children will be entitled to attend family reunions with their grandparents, even if this conflicts with the weekend schedule. Finally, the court ordered Diana and Kenneth to comply with Allison's request for reunification counseling with the children, so long as Allison complies with all recommendations made by the reunification counselor and the children's counselor and complies with all court orders.

**STANDARD OF REVIEW**

6

¶10 A district court's order granting a temporary guardianship is immediately appealable. M. R. App. P. 6(4)(a); *In re Guardianship & Conservatorship of A.M.M.*, 2015 MT 250, ¶ 22, 380 Mont. 451, 356 P.3d 474 (citing *In re Klos*, 284 Mont. 197, 201, 943 P.2d 1277, 1279 (1997)). "Subject to statutory restrictions, the selection of the person to be appointed guardian [or conservator] is committed largely to the discretion of the trial court." *In re A.M.M.*, ¶ 16. This Court will interfere with such an appointment only "in the case of a clear abuse of discretion." *In re A.M.M.*, ¶ 16 (citing *In re Guardianship of Nelson*, 204 Mont. 90, 94, 663 P.2d 316, 318 (1983)). We review a district court's conclusions of law related to the appointment of a guardian to determine if they are correct. *Fischer v. Fischer*, 2007 MT 101, ¶ 8, 337 Mont. 122, 157 P.3d 682 (citing *In re Guardianship of D.T.N.*, 275 Mont. 480, 483, 914 P.2d 579, 580 (1996)).

**DISCUSSION**

¶11 *1. Was Carol entitled to a statutory priority for appointment as temporary guardian by virtue of Josh's testamentary appointment?*

¶12 Montana's Uniform Probate Code, Title 72, chapter 5, part 2, MCA, governs the appointment of a guardian for a minor child whose parent has died. A person becomes the minor's guardian "by acceptance of a testamentary appointment or upon appointment by the court." Section 72-5-201(1), MCA.

¶13 Josh executed his Will on May 29, 2020. Josh's Will appointed his wife Carol as the testamentary guardian for his minor children and stated that he did not wish for the children to be placed in the custody of their biological mother or with any members of Josh's family. Carol argues that she accepted Josh's testamentary appointment, and it

7

entitles her to statutory priority to be appointed as the children's guardian and conservator. Diana and Kenneth respond that, because the children's natural mother is living and her rights have not been terminated, the testamentary appointment has no effect, and the District Court properly appointed a guardian after considering the children's best interests.

¶14    Section 72-5-211, MCA, provides in pertinent part that "a testamentary appointment becomes effective upon filing the guardian's acceptance in the court in which the will is probated if before acceptance both parents are dead or the surviving parent is adjudged incapacitated."[3]  Because Allison is living and has not been adjudicated to be incapacitated, the District Court turned to § 72-5-222(1), MCA.  That section allows the court to appoint a guardian for a minor child "if all parental rights of custody have been terminated or if parental rights have been suspended or limited by circumstances or prior court order."  The District Court concluded, based upon clear and convincing evidence, that Allison's parental rights have been limited by circumstances and that it therefore had the authority, as provided in § 72-5-223, MCA, to appoint as guardian "any person whose appointment would be in the best interests of the minor, including the minor's interest in continuity of care."

¶15    Carol acknowledges that she did not "automatically" become the children's guardian under § 72-5-211, MCA, upon acceptance of Josh's testamentary appointment

---

[3] Section 72-5-101(1), MCA, defines "incapacitated person" as "any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause, except minority, to the extent that the person lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the person or which cause has so impaired the person's judgment that the person is incapable of realizing and making a rational decision with respect to the person's need for treatment."

because Allison is a competent, living natural parent. She maintains, however, that the testamentary appointment gives her "priority over any guardian who may be appointed by the court" under the express provisions of § 72-5-222(2), MCA. Diana and Kenneth counter that, because Allison admitted that her parental rights had been limited by circumstances of her own doing and nominated them to be the children's guardians and conservators, her nomination was presumed to be in the children's best interests, and the District Court appropriately proceeded to appoint them pursuant to § 72-5-223, MCA.

¶16 Upon review of the applicable statutes and our precedent, we conclude that the District Court had discretion to appoint Diana and Kenneth as J.S.M.'s temporary guardian upon Allison's consent and in accordance with § 72-5-223, MCA. Plainly, as all parties acknowledge, Josh's testamentary appointment did not "become[] effective" to vest Carol with guardianship when their mother is alive and competent. Section 72-5-211(1), MCA. Section 72-5-222(1), MCA, provides in relevant part that "[t]he court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or if parental rights have been suspended or limited by circumstances or prior court order." In such cases, "[a] guardian appointed by will as provided in 72-5-211 . . . has priority over any guardian who may be appointed by the court." Section 72-5-222(2), MCA. We disagree with Carol that this section entitled her to priority because Allison's rights had been limited by the circumstances of her actions.

¶17 We considered the meaning of the phrase "suspended or limited by circumstances" in *In re Guardianship of D.T.N.* In that case, D.T.N.'s natural mother temporarily relinquished physical custody of the child and later consented to the grandparents'

9

temporary guardianship. When the grandparents sought permanent guardianship, the mother withdrew her consent and moved to terminate the temporary guardianship. The district court, following a hearing, held that the child had been abused or neglected while in the mother's care, that after the mother relinquished custody she "did not evidence or demonstrate an intent to resume custody or to provide for the child's care," and that the child's best interests would be served by appointing the grandparents as permanent guardians. *In re D.T.N.*, 275 Mont. at 482, 914 P.2d at 580. Examining the guardianship statutes, we noted that § 72-5-225(2), MCA, allows the court to appoint a guardian if, among other things, "*the requirements of 72-5-222 have been met*." *In re D.T.N.*, 275 Mont. at 483, 914 P.2d at 580-81. Quoting Richard V. Wellman, in 2 Uniform Probate Code Practice Manual, at 511 (1977), we observed:

> Under the [Uniform Probate] Code, the power of the court to appoint a guardian for a minor is narrowly limited. . . . *It should be remembered, however, that the court has no power to appoint a guardian at all if the minor has a living parent entitled to his custody or a guardian appointed by the will of a parent [who] is willing to act.* The parents and their testamentary appointees have, therefore, priority over everyone whom the court might appoint unless the parents *have been deprived of custody*.

*In re D.T.N.*, 275 Mont. at 487, 914 P.2d at 583 (second emphasis added). We reversed the trial court's award of guardianship to the grandparents, concluding that despite her prior actions and consent, the mother's parental rights "were not terminated by circumstance." She "appeared in th[e] action, withdrew her consent to the temporary guardianship, and filed a petition to terminate the temporary guardianship." *In re D.T.N.*, 275 Mont. at 488, 914 P.2d at 583. We relied in part on *Matter of Guardianship of Aschenbrenner*, 182 Mont. 540, 597 P.2d 1156 (1979), in which this Court reversed a permanent guardianship to a

10

child's grandparents that was based partially on concerns about the mother's ability as a parent. We noted *Aschenbrenner*'s holding that the mother's rights had not been terminated and its conclusion "that whether the grandparents were better able to provide a good environment for the children than the mother was irrelevant because the mother had a fundamental constitutional right to the custody of her children." *In re D.T.N.*, 275 Mont. at 485, 914 P.2d at 582 (citing *Aschenbrenner*, 182 Mont. at 549, 597 P.2d at 1162).

¶18 We held likewise in *Fischer*, ¶ 25, that "a guardianship cannot be granted over [the] objections" of a parent whose rights have not been abridged. We concluded, a parenting plan that "simply determine[s] or limit[s] visitation that [one parent] may exercise with [the minor child does] not affect the standing of [the parent's] parental rights to [that child]." *Fischer*, ¶ 23.

¶19 Like the parent in *Fischer*, Allison's parental *rights* were not suspended by her restricted parenting plan in the dissolution action. And like the parent in *In re D.T.N.*, Allison's surrender of the children for a period of time—here, to their father—did not operate by law to limit her *rights* as a parent. "Surrender of custody of a minor child by a parent is presumed to be temporary unless the contrary is made to appear." *In re D.T.N.*, 275 Mont. at 485, 914 P.2d at 582 (internal quotation omitted). Certainly, Allison's ability to exercise her parental rights upon Josh's death was subject to court intervention upon appropriate petition by one of the parties to this case (*see*, § 40-4-221, MCA (discussed below)), or—if circumstances warranted—through action brought by the State (*see* Tit. 41, ch. 3, MCA). But Allison had not been "deprived of custody," and her rights as the natural parent could not be determined in this guardianship proceeding. *In re D.T.N.*, 275 Mont. at

11

487-88, 914 P.2d at 583 (concluding "that the guardianship provisions of the Probate Code were never intended as a substitute for the custody provisions of our Marriage and Divorce Act, nor the prescribed and demanding procedures established for the termination of parental rights" (citing §§ 40-4-211 through -226, MCA; §§ 41-3-601 through -612, MCA)). When Allison consented to the appointment of Diana and Kenneth as the children's guardians and testified that she wished to pursue reunification with the children, the District Court properly invoked § 72-5-223, MCA, to appoint a guardian "whose appointment would be in the best interests of the minor[.]"

¶20    Carol's appeal is grounded in the court's interpretation of the guardianship statutes. She does not argue clear error in the District Court's factual findings, and we agree that the record contains substantial credible evidence to support them. Under the governing legal standards, we conclude that the court did not abuse its discretion when it issued an order appointing Diana and Kenneth as J.S.M.'s temporary guardian.

¶21    *2. Did the District Court err when it did not make the order for appointment permanent?*

¶22    Diana and Kenneth argue on cross-appeal that the District Court should have entered a full and permanent guardianship and erred when it failed to do so based on Allison's consent and the record before it. Carol responds that the court acted on the petitions that the parties had filed and did not commit reversible error by entering temporary orders.

¶23    The petitions, hearing, and orders at issue on appeal all occurred within less than two months of Josh's death. The District Court's June 10, 2020, Order appointed Diana and Kenneth as temporary guardians "to preclude uncertainty and conflict regarding

12

the placement of the child pending a hearing." It set the hearing for six days later on "[t]he issue of whether Petitioners should continue to serve as Temporary Guardians." It continued that hearing on Allison's motion, because she had just learned of Josh's death the day before the scheduled hearing and wanted to participate. The court opened the July 8 proceeding by stating, "We're here for a hearing on temporary guardianship." The matter was never anything but a proceeding on temporary appointment. The District Court had no legal obligation to enter an order for permanent appointment, and it did not abuse its discretion in entering a temporary order.

¶24    *3. Did the District Court have authority to award Carol a right to visitation with the children after appointing Diana and Kenneth as temporary guardians?*

¶25    Finally, Diana and Kenneth point out that the petitions in the consolidated cases were petitions for appointment of guardians and conservators brought under Title 72, chapter 5, MCA. They argue that the District Court's authority under that chapter is limited and did not include authority to grant parenting or visitation rights to any non-parent third party. Diana and Kenneth argue that the court's authority to order such visitation is provided only by Title 40, MCA, and Carol must bring a proper petition to obtain that relief.

¶26    Carol first urges the Court not to consider this argument because Diana and Kenneth did not make it to the District Court. We agree with Diana and Kenneth, however, that the issue before the court at all times was the parties' competing claims to appointment as the children's guardians with full rights bestowed by statute for that purpose. The District Court entered its interim orders immediately following Josh's death to make sure the

13

children were not caught in the middle of the dispute and to preserve stability and contact with each party pending its resolution of the temporary guardianship. The court soundly exercised its discretion when it maintained the children's time with both their grandparents and their stepmother in the weeks following their father's death. Under the circumstances of the interim orders and the expedited nature of the temporary guardianship proceedings, we conclude that Carol and Kenneth did not waive the argument they present on appeal regarding the court's authority to include a visitation right for Carol in the temporary guardianship order.

¶27 Turning to the merits, we emphasize that the order on appeal is a temporary order. As it had with the prior interim orders, the District Court maintained both parties' contact with the children during the pendency of the proceeding. Diana affirmed in her testimony that she would be willing to maintain Carol's relationship with the children, and the court's temporary order in this regard is not grounds for reversal. We agree with Diana and Kenneth, however, that the court lacks authority to issue an order granting a final third-party parenting or visitation interest in a guardianship proceeding. Both parties brought their petitions under Title 72, chapter 5, MCA, which governs proceedings for guardianship of a minor. *See Fischer*, ¶ 22. The entry of a parenting plan upon the death of one parent is governed by § 40-4-221, MCA, which allows the surviving spouse of a deceased parent to seek a parenting plan; the action must name the surviving parent as a party. Section 40-4-221(1), MCA. "The hearing and determination of a parenting plan is governed by [Title 40, ch. 4, pt. 2, MCA]." Section 40-4-221(3), MCA. Once the guardianship issue is resolved by permanent appointment, the determination of any further parenting or

14

visitation interest must be handled through a separate petition for parenting plan in accordance with § 40-4-221, MCA.

## CONCLUSION

¶28 Josh's testamentary appointment of his surviving spouse Carol to serve as guardian of his minor children was not effective when the children's natural mother Allison was living and not incapacitated, nor did it give Carol statutory priority. Because Allison consented to appointment of Diana and Kenneth and the District Court found from the evidence that the children's best interests would be served by their appointment, the court did not abuse its discretion in appointing Diana and Kenneth as temporary guardians or in allowing Carol specific time with the children during the pendency of the proceedings. We therefore affirm the Order Appointing Temporary Guardians and Conservators.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

15